OPINION OF THE COURT
Jules E. Orenstein, J.
The petitioner Richard Schmaeling commenced this summary holdover proceeding against himself, doing business as Hilltop Service Station, the respondent tenant herein and against Walter Coven, as the respondent undertenant in possession of the subject premises, a gasoline station.
The petition recites that respondent Schmaeling, doing business as Hilltop Service Station, is the tenant and entered into possession of the premises under a written rental agreement on or about December 17, 1979 between said respondent and the landlord for a term of five years ending December 31, 1984.
The petitioner seeks to recover possession of the premises from the respondent undertenant Walter Coven (hereafter Coven) who is in possession of the premises under the terms of a sublease agreement between petitioner Richard Schmaeling and Coven which term expires June 1988, on the grounds that the term of the overlease between petitioner/landlord Richard *764 Schmaeling and respondent Richard Schmaeling expired on December 31, 1984.
Trial was conducted on February 14, 1985 and decision reserved at its conclusion.
The petitioner, Richard Schmaeling, the landlord/owner of the subject premises, and respondent, Richard Schmaeling, doing business as Hilltop Service Station, are one and the same person.
In June 1983, petitioner and Coven entered into a written lease agreement for the subject premises. Petitioner introduced into evidence as petitioner’s exhibit No. 1 the executed lease agreement. The petitioner’s attorney referred to the document as an “underlease”.
The instrument, a form agreement, on its face is titled a sublease agreement. The document refers to the parties of the sublease as Richard Schmaeling, overtenant, and Walter Coven, undertenant. The agreement refers to an overlease.
The document recites as “Information from overlease” that Richard Schmaeling is the landlord, that Richard Schmaeling is the overtenant, the date of the overlease is July 1,1983 and the term is six months from August 1, 1983 to December 31, 1983.
Said agreement provides that a copy of the overlease is attached as an important part of the sublease. The court permitted paroi testimony regarding the negotiation and execution of the sublease since respondent’s answer and counterclaim contain allegations of fraud. However, no copy of the overlease was ever attached to the sublease nor was it ever offered with exhibit No. 1. When the parties negotiated the agreement, no copy of the overlease was sent to respondent’s attorney. Neither petitioner nor his attorney ever showed the purported overlease to respondent prior to or at the time the lease was executed.
Attached to the form sublease agreement is a typewritten rider setting forth additional obligations and rights of parties. Paragraph 16 of the rider provides: “Provided the subtenant is not in default in any of the terms, conditions and/or provisions of this sublease agreement, the subtenant shall have the privilege of renewing this sublease agreement for 9 additional 6 month terms at the same rental, which option shall automatically occur without notice unless the subtenant shall notify the overtenant at least 1 month in writing, before any renewal, of its intention not to exercise the option.”
The rental term is changed, by handwritten amendment along the side of the rider page. The amendment provides that the rent *765 will increase $25 at the exercise of the 2nd, 4th, 6th and 8th options. The amendment expressly recites the rental amount for those years. The fifth year’s rent being $850 per month.
While no proof at all was adduced by petitioner as to the existence of an overlease dated July 1, 1983, petitioner did introduce into evidence as petitioner’s exhibit No. 2 a purported lease agreement dated December 17, 1979 between Richard Schmaeling and Richard Schmaeling, doing business as Hilltop Service Station, the same lease agreement upon which petitioner brings the instant proceedings.
The only signatures appearing on this purported lease are those of Richard Schmaeling. His signature appears twice on the signature lines. The December 17, 1979 lease was never recorded. Petitioner testified that he had forgotten about this lease when he negotiated and executed the sublease with Coven and did not find the lease until 6 or 8 weeks before the time of trial.
The December 17,1979 purported lease, by its terms, runs for a period of five years, commencing on January 1, 1980 and expires on the 31st day of December 1984.
At the trial, the court took judicial notice that petitioner had commenced a prior summary proceeding against Coven in November 1984, to recover possession of the same premises. The petitioner was permitted to withdraw said petition with prejudice.
The court notes that the petition in the earlier summary proceeding referred to Richard Schmaeling as landlord and Walter Coven as tenant. The petition also recites that tenant Coven entered into possession of the premises pursuant to a written agreement entered into in June 1983. The grounds for the summary proceeding were for an alleged breach of an agreement with an oil company.
It was adduced at trial that Coven has been paying rent under the terms of the 1983 lease to petitioner who deposits the rent into his personal account.
CONCLUSIONS OF LAW
The law is clear that a subtenant receives his estate from his sublessor and that the sublease is dependent upon the paramount lease for its existence. (See, 1 Rasch, Landlord & Tenant, Summary Proceedings § 234, at 299 [2d ed].)
Accordingly, if the lease executed by petitioner and Coven is a sublease of a paramount lease which has terminated or expired, then too must Coven’s sublease come to an end. (See, Bove v Coppola, 45 Misc 636 [App Term 1904].)
*766 Petitioner’s theory as to his right to recover possession from Coven is that petitioner as owner/landlord created a tenancy by lease agreement with himself for a period of years which expired on December 31, 1984.
It follows, petitioner contends, that he could only grant Coven whatever interest he had in the premises under the terms of the “overlease” he created in himself.
The court disagrees. Petitioner’s interest in the subject premises at the time he executed the sublease agreement with Coven was that of owner and landlord and not tenant.
Two well-settled principles of law require this court to hold that petitioner’s interest in the subject premises was that of owner/landlord, not tenant, at the time he executed the lease agreement with Coven.
The relationship of landlord and tenant, except for statutory tenancies, can only be created by contract either express or implied. (Stern v Equitable Trust Co., 238 NY 267 [1924]; see, Rasch, op. cit. §§ 1, 11.), A lease is the contract by which the relationship of landlord and tenant is created. (Rochester Poster Adv. Co. v State of New York, 27 Misc 2d 99, affd 15 AD2d 632, affd 11 NY2d 1036.) Since a lease is a contract as well as a conveyance it requires the participation of at least two parties, a lessor and lessee. (Rasch, op. cit. § 33, citing Persky v Bank of Am. Natl. Assn., 261 NY 212; Heath v Hewitt, 127 NY 166.) Therefore, it is held that a person cannot contract with himself. (Canandaigua Natl. Bank & Trust Co. v Commercial Credit Corp., 285 App Div 7, 10, citing Persky v Bank of Am. Natl. Assn., supra; 21 NY Jur 2d, Contracts, § 26.)
In Persky v Bank of Am. Natl. Assn. (supra, p 219), the Court of Appeals stated: “There must always be two parties to a contract and a promise to pay or a guaranty of a payment ceases to be a contract when the promisor becomes the owner of his own promise.”
Consonant with this principle, this court holds that the lease which petitioner executed with himself is not valid and is unenforceable. For if no valid contract has been entered into, then there is no agreement of any kind enforceable at law. (Foster v Clifford, 42 Misc 496; Rasch, op. cit. § 17.)
Furthermore, even if the petitioner could have validly executed a lease agreement with himself thereby creating a tenancy in himself for a period of years, said tenancy would have merged and extinguished with his interest as owner in fee of the premises.
*767 It is a well-settled general rule of law that when a greater and lesser estate meet in the same person, without the existence of an intermediate estate, the lesser estate is immediately merged in the greater. (Matter of Nochomov, 206 Misc 290; 34 NY Jur, Landlord and Tenant, § 354, at 198, 199; see also, Jemzura v Jemzura, 36 NY2d 496.) This rule applies to leases. (Bostwick v Frankfield, 74 NY 207.)
Since a person cannot be both landlord and tenant, a tenancy for years or a lesser tenancy merges and is extinguished in a freehold estate when the tenancy and the freehold estate vests in the same person at the same time. (34 NY Jur, Landlord and Tenant, § 354, at 199.)
Clearly, any tenancy for a period of years created by petitioner by purported lease dated December 17, 1979, merged with petitioner’s greater estate of landlord and owner in fee of the subject premises. No evidence was adduced at trial of any intermediary estate.
Accordingly, the court finds that at the time that petitioner executed the purported sublease agreement with Coven, the petitioner’s interest in the subject premises was not limited by any tenancy for a period of years.
The court holds that the lease agreement executed between petitioner and Coven is not carved out of a larger tenancy but is in fact a principal lease.
The name or form of the instrument executed by petitioner and Coven is not dispositive of the legal effect which the court will give the agreement. The court must look to the nature of the transaction instead of relying upon names attached to it by the parties. (Rasch, op. cit. § 182; see, Glendening v Western Union Tel. Co., 163 App Div 489; Rochester Poster Adv. Co. v State of New York, supra.)
A consideration of the entire instrument clearly shows that the manifest intent of the parties was to give the right of exclusive control and possession of the premises to the respondent Coven for a term of up to five years from the date of execution of the agreement. This intent is evidenced by the rider to the agreement for nine additional six-month terms.
Additional evidence that petitioner intended that Coven have such right is that the typewritten rider clause is changed by handwritten amendment providing for rental increases of $25 per month with a rental of $850 the fifth year.
The court holds that the instrument executed in June 1983 between petitioner and Coven is enforceable as a principal lease *768 giving Coven the right to possession of said premises pursuant to the terms of the lease.
Accordingly, the petition is hereby dismissed.
Respondent Coven’s motion to withdraw his counterclaim is hereby granted without prejudice.