OPINION OF THE COURT
Dorothy Chin Brandt, J.
This action involves a dispute between the parties as landlord and tenant, respectively, of a rent-stabilized residential *904 apartment premises located in the building known as 860 Grand Concourse, Bronx, New York.
Tenant moves by 'order to show cause for this court to vacate and set aside both a judgment in favor of the landlord in this summary nonpayment proceeding granted March 15, 1988, and a warrant of eviction issued (but stayed) thereunder.
The summary nonpayment proceeding was commenced more than two years ago, and the court file indicates that throughout the proceeding the named tenant has been represented by her husband, Steve Mitchell, who resides in the subject apartment with the named tenant and their two children, and who regularly appeared in court and filed most of the papers on behalf of the tenant in this matter.
Although the history of agreements, stipulations, orders, etc., in this action is rich, the sole issue now presented to this court is whether the execution of a renewal lease agreement between the parties at a time when, technically, an appeal by tenant of a Housing Court order of final possession in favor of the landlord could have been perfected, combined with the regular and timely offer and acceptance of rental payments pursuant to the renewal lease agreement, effectively reinstated the landlord-tenant relationship between the parties and thus precludes an order for execution of the warrant of eviction at this time. Each party has submitted memoranda and has orally argued the issue before this court.
A review of the court file indicates that the factual history of this action is as follows:
In 1986, the tenant succeeded in obtaining a rollback of rent pursuant to a district rent administrator order (which order was reversed upon landlord’s subsequent administrative appeal). The tenant alleges that the landlord’s initial action for rent arrears herein flowed from tenant’s reliance upon the administrator’s rollback order and tenant’s resulting expectation or credit for past overpayments of rent.
Tenant’s several applications to the Housing Court for orders to show cause during the years 1987 and 1988 were granted on the various bases offered by the tenant. Pursuant to various stipulations between landlord and tenant, certain rental payments were made by the tenant to the landlord, and execution of a warrant of eviction was stayed and/or vacated accordingly.
A 1987 transfer of ownership of the building premises *905 involved seemed to complicate the matter for the parties, but only temporarily.
Tenant’s claims (actually Mr. Mitchell’s claims) of unforeseen business reversals and promisés to pay acknowledged rental arrears resulted in still further stays of execution of a warrant of eviction sought by the landlord and issued by the Housing Court.
On March 15, 1988, the late Honorable Sidney Rosen issued a decision and order denying tenant’s motion to prevent execution of a warrant of eviction based upon tenant’s claim of "good cause shown” (apparently consisting primarily of Mr. Mitchell’s representations, in January 1988, that his business difficulties had cleared up and he was at that time willing and able to pay all rent arrears in full, plus future rental payments for the months of February and March 1988).
Judge Rosen found, simply, that the tenant-businessman-property owner’s repeated past promises to pay rent arrears and his repeated failure to keep those promises due to alleged business difficulties did not constitute sufficient "good cause” as contemplated by the provisions of RPAPL 749 (3) to allow the Housing Court to vacate an issued warrant of eviction prior to its execution. However, Judge Rosen’s decision and order stayed final execution of the warrant of eviction to April 30, 1988, on condition that the tenant pay appropriate use and occupancy for the months of March and April 1988.
On April 19, 1988, tenant filed with the Housing Court a copy of a notice of appeal of Judge Rosen’s March 15, 1988 decision and order, addressed to the Appellate Term, First Department. By motion dated April 22, 1988 addressed to the Appellate Term, tenant requested a stay of the summary proceedings pending the appeal, on the basis that without such a stay the appeal would be rendered moot and the tenant appellant would be subjected to great hardship and irreparable injury because of "unnecessary eviction.”
Tenant’s motion for a stay pending appeal was granted by the Appellate Term on April 29, 1988, on the following three conditions: (1) that tenant pay outstanding arrears to landlord on or before May 9, 1988; (2) that tenant continue to pay use and occupancy at the rate previously payable as rent; and (3) that tenant perfect the appeal by the September 1988 Term.
On May 17, 1988, landlord applied to the Appellate Term for an order vacating the stay and dismissing the appeal, apparently based upon landlord’s alleged difficulty in cashing *906 a check delivered by tenant to the landlord on or about May 9, 1988, pursuant to the Appellate Term’s order. The Appellate Term ruled that the landlord’s motion would be granted unless tenant paid outstanding arrears to landlord on or before May 31, 1988. A careful review of the court file and all papers submitted by the parties hereto indicates that the only further action taken regarding the subject apartment in the year 1988 by the landlord was the landlord’s forwarding to the tenant a standard "Renewal Lease Form” dated July 13, 1988, apparently in contemplation of the expiration of the underlying lease term on September 30, 1988.
The lease renewal agreement was duly executed by the tenant on September 26, 1988, and by the landlord on September 30, 1988. Pursuant to the typewritten portions of the renewal lease form forwarded by the landlord to the tenant, the tenant chose the two-year renewal option and thereby accepted the indicated statutory 9% increase in rent.
There is no allegation before this court that the tenant has not paid all alleged rental arrears under its prior rental agreement with the landlord, nor that the tenant has failed to faithfully perform its obligations, including the timely payment of the increased monthly rental installment amounts, pursuant to the provisions of the renewal lease agreement executed by the parties in September of 1988.
As previously noted, the sole issue now before this court is whether the renewal lease agreement, executed by the parties approximately one year ago, effectively reinstated the landlord-tenant relationship that had been previously nullified by the issuance of the warrant of eviction by Judge Rosen in March of 1988 (and not executed to date), thereby precluding the landlord from seeking to execute the warrant at this time.
The tenant’s position (through Mr. Mitchell) is that he abandoned pursuit of his appeal of the March 15, 1988 court order based upon his belief that the issue was rendered moot by the execution of the lease renewal agreement, and that the landlord may not now seek execution of the warrant of eviction issued prior to the execution of the lease renewal, which tenant believes expressly reinstated the tenancy.
On the other hand, the landlord’s position is that he issued and executed the renewal lease herein merely to comply with the provisions of the Rent Stabilization Code regarding lease renewals, and the Appellate Term order staying the summary proceedings and allowing the tenant to remain in the subject *907 premises pending appeal. In short, the landlord claims that when he issued and executed the lease renewal agreement, without including any indication thereon (or anywhere) that the agreement was not what it purported on its face to be, he really did not intend to enter into a renewal lease agreement with the tenant and thereby reinstate the tenancy.
This court finds the landlord’s position untenable in the circumstances.
It is undisputed that a warrant of eviction was issued in this matter upon the entry of a Housing Court final judgment in favor of the landlord in March of 1988. The issuance of that warrant of eviction effectively terminated the landlord-tenant relationship between the parties. (See, RPAPL 749 [3]; see also, J.A.R. Mgt. Corp. v Foster, 109 Misc 2d 693 [App Term, 2d Dept 1980].)
It is also undisputed that after issuance of the warrant of eviction the landlord accepted tenant’s tender of rent arrears and continued to accept payments of the appropriate monthly rental amount through the term of the underlying lease (which expired on Sept. 30,1988), and thereafter.
Tenant cites 3 Rasch, New York Landlord and Tenant— Summary Proceedings § 46.23 (3d ed), and posits, inter alia, that the landlord’s continued acceptance of rental payments after issuance, but prior to execution, of the warrant of eviction reinstated the tenancy, and thus execution of the warrant at this time is precluded.
However, it is well settled that a landlord’s mere continued acceptance of rental payments after issuance of a warrant of eviction, without more, does not automatically reinstate the landlord-tenant relationship. (See, e.g., Housing Auth. v Torres 61 AD2d 681 [1st Dept 1978]; J.A.R. Mgt. Corp v Foster, supra.)
Nevertheless, in the particular circumstances of this case, this court finds that there is, indeed, "more” to consider.
Particularly, this court has before it a formal document entitled "Renewal Lease Form” covering the subject premises and containing terms allowing the named "tenant” therein a one-or-two-year renewal option (tenant chose the two-year option), beginning and ending on specific dates set forth therein, stating a specific increased renewal rental rate, and duly executed by the parties hereto, acknowledged in the lease renewal agreement to be "owner” and "tenant”, respectively. It is undisputed that this "Renewal Lease Form” was forwarded by landlord to tenant and duly executed by both *908 parties while the appeal process was still viable, and the validity of the issuance of the warrant of eviction was not yet finally determined.
Landlord urges this court to consider the "intent” of the lease renewal document, and to accept his offer at this time of an intent on his part not manifest within the express terms thereof, i.e., that the lease renewal agreement is not really what it appears to be.
Indeed, the provisions of the Rent Stabilization Code require that a renewal lease be offered timely to a tenant in occupancy of rent-stabilized premises, except in certain circumstances which are not in issue in this case. (See, Rent Stabilization Code [9 NYCRR] parts 2523, 2524; see also, Gruen v Patterson, 55 NY2d 631 [1981].) Additionally, the courts of this State have held consistently that it is the landlord’s intent in accepting rental payments after a warrant of eviction has been issued or stayed in a nonpayment proceeding that governs whether the landlord-tenant relationship has been reinstated. (See, e.g., J.A.R. Mgt. Corp. v Foster, supra; Grabher v Glasgow, NYLJ, Apr. 17, 1984, at 12, col 3 [App Term, 2d Dept].)
However, the courts of this State have also held consistently that the creation of the landlord-tenant relationship may properly be inferred from intentional, affirmative actions of the parties concerned, in addition to written and executed rental agreements, manifesting the intent to create such a relationship. (See, e.g., Berkeley Assocs. Co. v Revere Garage Corp., NYLJ, Oct. 22, 1981, at 6, col 4 [App Term, 1st Dept]; Ansonia Assocs. v Pearlstein, 122 Misc 2d 566 [Civ Ct, NY County 1984]; J.A.R. Mgt. Corp. v Foster, 109 Misc 2d 693 [App Term, 2d Dept 1980], supra; 2530 Ocean Ave. Realty v McNeill, NYLJ, June 10, 1976, at 10, col 4 [App Term, 2d Dept 1980].)
This court finds that there is absolutely nothing contained within the "Renewal Lease Form” which can reasonably be said to have alerted the named "tenant” that the lease renewal was forwarded and executed by the landlord merely (as the landlord now contends) to comply with the mechanical requirements of the lease renewal provisions of the Rent Stabilization Code, i.e. there is nothing which would indicate to a reasonable person that the lease renewal offer, unambiguous on its face, is not what it appears to be.
A written lease agreement, whether providing for an initial or renewal term, is a form of contract between the parties *909 thereto. The Court of Appeals has long recognized that a contract entered into for the lease of particular premises, "like any other contract is to be enforced in accordance with the expressed intention of the contracting parties” (emphasis added). (Orr v Doubleday, Page & Co., 223 NY 334, 341, mot to amend remittitur denied 223 NY 700 [1918].)
Although the landlord at this time seeks to convince the court that his actual intention in entering into the instant lease renewal agreement is not consistent with the expressed intention contained within the terms of the document on its face, he did not even attempt to place any kind of conditional clause into that lease contract (which was prepared by the landlord and forwarded to the tenant for execution, and in due course returned to the tenant fully executed), either within the printed or typewritten sections thereof.
For example, the landlord easily could have maintained the "real intention” he now presents to this court (i.e., that he intended merely to comply with the Appellate Term stay granted through September 1988, and the provisions of the Rent Stabilization Code requiring that a tenant in possession be offered a timely renewal lease, but not to revive the landlord-tenant relationship), by adding a simple sentence within the lease renewal agreement to the effect, perhaps, that the landlord offers the lease renewal subject to determination of the tenant’s appeal of an existing Housing Court order in a nonpayment proceeding, granting final judgment of possession of the subject premises to the landlord and issuing a warrant of eviction (stayed).
If reason and order are to prevail, courts must uphold the unambiguous terms of a contract, not illegal in form or content, that is duly executed by the parties thereto. Thus, the unambiguous terms of the lease renewal agreement herein must govern.
Indeed, to allow the landlord to argue at this time that his actual intent in executing the lease renewal agreement (or contract) prepared by his office was not to agree (or contract) with the tenant (designated "tenant” therein) with regard to the terms and conditions expressly and clearly manifest on its face, would condone deceptive rental practices that would violate the provisions of section 2525.3 (d) of the Rent Stabilization Code (9 NYCRR parts 2520 et seq.), which states in *910 pertinent part, that "[n]o owner or other person shall engage in any * * * illusory * * * rental practices which deprive a tenant in possession of his or her rights under this Code.” Certainly, the right under the Rent Stabilization Code of a tenant in possession of a rent-stabilized premises to expect a timely lease renewal offer from his landlord does not preclude a landlord, in particular circumstances, from reserving his own rights under the Code, and/or otherwise, as he perceives them to be.
Here, a formal lease renewal agreement — a contract between competent parties containing legally sufficient, clear and unambiguous terms and conditions for the long-term rental of a rent-stabilized residential apartment premises— was duly executed by the landlord and tenant, thereby manifesting their agreement/intent to abide by its express terms and conditions. Any reading of that duly executed rental contract that would allow the addition of any unexpressed additional or conditional terms would fly in the face of reason, order, justice and the governing provisions of the Rent Stabilization Code.
Accordingly, this court holds that notwithstanding an appellant’s pending right to appeal an adverse decision in a summary nonpayment proceeding and issuance (but stay) of a warrant of eviction thereunder, when the landlord subsequently forwards an unconditional lease renewal offer to the party in possession of the rent-stabilized premises in question (who is not then in arrears in the payment of rent), and the offer is duly accepted, the landlord-tenant relationship is thereby effectively revived. It follows, therefore, that a party in possession and not then in arrears in the payment of rent, who duly executes an unconditional lease renewal agreement forwarded and duly executed by the landlord before the validity of a previously issued warrant of eviction in a summary nonpayment proceeding is finally determined, is protected from eviction.
Thus, this court holds that in the circumstances herein, the landlord-tenant relationship between the parties was effectively revived in September of 1988, when the lease renewal agreement herein was entered into. Therefore, the tenant’s application to this court to vacate and set aside both the judgment dated March 15, 1988, and the warrant of eviction *911 issued (but stayed) thereunder, is granted and the matter is dismissed. Of course, in the event that either party fails to comply with any of its obligations pursuant to the terms of the renewal lease agreement now in effect, the offended party may make application to this court for any appropriate remedy.