In re SANSHOE WORLDWIDE
CORPORATION, Debtor.

EBG MIDTOWN SOUTH
CORP., Plaintiff,

v.

MCLAREN/HART ENVIRONMENTAL
ENGINEERING CORPORATION,
Defendant.

Nos. 91 Civ. 4485 (LBS),
91 Civ. 3300 (LBS).

United States District Court,
S.D. New York.

March 6, 1992.

Beveridge & Diamond, P.C., New York City (Thomas deRosa, Edward G. Bailey, of counsel), for McLaren/Hart Environmental Engineering Corp.

## OPINION

SAND, District Judge.

These cases, a bankruptcy appeal and a declaratory judgment action, both concern the status of a commercial sublease for the 11th floor of premises located at 470 Park Avenue South in New York City, and involve three corporate entities, the Sanshoe Worldwide Corp. (hereinafter "Sanshoe"), McLaren/Hart Environmental Engineering Corp. (hereinafter "Hart"), and EBG Midtown South Corp. (hereinafter "EBG"). In an order entered May 9, 1991, the Bankruptcy Court for the Southern District of New York (Abram, B.J.) approved the assumption of the sublease by Sanshoe the sublessor/debtor, and its assignment to EBG. Hart, the sublessee, now appeals from this order. EBG, the assignee, has brought an action against Hart in this Court, seeking a declaration that the sublease term has ended due to Hart's abandonment, and a award of rent and liquidated damages. Hart now moves to dismiss or stay this action, while EBG moves for summary judgment.

For the reasons that follow, we consolidate these cases for the purpose of deciding the appeal and motions. As discussed below, we affirm the Bankruptcy Court's order, and deny Hart's motion to dismiss or stay the declaratory judgment action. We grant EBG's motion for summary judgment with respect to its claim of abandonment of the premises by Hart. We hold that EBG is entitled to remedies, and refer the rent and damage claims to a Magistrate Judge of the Southern District to determine in a manner consistent with this Opinion.

## I. BACKGROUND AND PROCEDURAL HISTORY

Sanshoe signed a lease on July 15, 1986 with 470 Park South Associates, L.P. (hereinafter "470 Park South") for the 11th

Winick & Rich, P.C., New York City (Jonathan Flaxer, of counsel), for Sanshoe Worldwide Corp.

Seiden, Stempel, Bennett & D'Agostino, New York City (Richard Claman, of counsel), for EBG Midtown South Corp.

floor of a building located at 470 Park Avenue South. The lease ran for a ten-year term, beginning in September 1986, and ending on August 31, 1996. Under separate lease agreements, Sanshoe also rented the 12th floor and part of the 9th floor in the same building. On January 19, 1990, Hart signed a sublease for the 11th Floor with Sanshoe, which provided that the term would extend through the expiration of the lease in August 1996.

As of December 20, 1990, Sanshoe had not paid its December 1990 rent, and 470 Park South initiated a non-payment proceeding in New York State landlord-tenant court. *See* Affidavit of Benjamin P. Feldman, Vice–President and General Counsel of EBG, and General Counsel to 470 Park South, ¶ 9 (hereinafter "Feldman Aff."). Sanshoe did not answer the petition. However, Sanshoe tendered and 470 Park South accepted a check representing full payment of the December rent on January 7, 1991. *See* Letter of Jordan M. Cahn, Winick & Rich, attorneys for Sanshoe, to the Court, July 31, 1991, (accompanied by copy of endorsed check), attached to Plaintiff's Reply Memorandum of Law in Further Support of Motion for Summary Judgment (hereinafter "EBG Reply Mem."). On January 9, 1991 the landlord-tenant court issued a default judgment and warrant against Sanshoe. *See* Judgment of January 9, 1991, attached to EBG Reply Mem. The warrant was never executed. *See* Feldman Aff. ¶ 9.

Sanshoe failed to pay the rent due for January 1991, and on or about January 24, 1991, 470 Park South began a new nonpayment proceeding. *See* Notice of Petition, attached as Exhibit B to Feldman Aff. The hearing for this proceeding was adjourned by stipulation between the parties and then ultimately stayed due to Sanshoe's filing of a bankruptcy petition. *See* Feldman Aff. ¶ 10. Another nonpayment proceeding was initiated by 470 Park South on or about February 22, 1991 for nonpayment of February rent. *See* Notice of Petition, attached as Exhibit C to Feldman Aff. Hart,

which had paid its rent to Sanshoe during this period, was also named and served in the February petition. No hearing was held on the February petition, and no judgment or warrant issued with respect to either the January or February petitions. *See* Feldman Aff. ¶ 11.

On March 1, 1991, Sanshoe filed a petition for Chapter 11 protection. On or about March 23, 1991, Hart vacated the premises. *See* Feldman Aff. ¶ 18; Affidavit in Opposition to Motion for Summary Judgment of Raymond W. Kane, Managing Principal of Hart, at ¶¶ 5, 9 (hereinafter "Kane Aff."). Thereafter, Hart made the payment of base rent that had been due on March 1, 1991, and the payment of base rent due on April 1, 1991. *See* Feldman Aff. at ¶ 19.

In the course of the Chapter 11 proceedings, on April 24, 1991, Sanshoe brought on by Order to Show Cause, an application seeking Bankruptcy Court approval of a stipulation (hereinafter "Stipulation") between Sanshoe, 470 Park South, and EBG. Under the Stipulation, (1) Sanshoe proposed to assume the lease and sublease for the 11th floor pursuant to 11 U.S.C. § 365 and assign them to EBG, the corporate general partner of 470 Park South; (2) Sanshoe would reject its 9th and 12th floor leases; and (3) 470 Park South consented to such assumption and assignment, agreed to release to Sanshoe an amount representing Sanshoe's remaining security deposit, and waived all claims against Sanshoe's estate arising from the 9th and 12th floor leases.

On May 1, 1991 Hart filed objections to the application, arguing that the requested relief was improper under the Bankruptcy Code, as well as under New York landlord-tenant principles. The Bankruptcy Court held a hearing on the application on May 3, 1991, and on May 9, 1991, it entered an order which approved the Stipulation with certain amendments.

On May 15, 1991,[1] Hart commenced an action in New York Supreme Court against

---

1. Hart contends that it attempted to serve 470 Park South and EBG on May 14, 1991 at the offices of S.L. Green Properties, the managing

agent for 470 Park Avenue South, but the principals refused to accept the papers. *See* Memorandum of Law in Support of Motion to Dismiss

470 Park South and EBG, seeking declaratory relief that the sublease had terminated and that Hart's obligations under the sublease had ended. Hart also seeks rescission of the sublease as well as damages for breach and fraudulent misrepresentation. On May 15, 1991, EBG filed the present action against Hart in federal court seeking a declaratory judgment that the sublease term was ended due to Hart's abandonment, and seeking an award of rent and damages. On May 20, 1991, Hart filed an appeal from the Bankruptcy Court's Order with this Court.

On June 3, 1991, 470 Park South and EBG, defendants in the state action, filed a motion to dismiss or stay that action. Hart moved to dismiss or stay the federal action on June 21, 1991 and on July 3, 1991 EBG moved for summary judgment. On September 12, 1991, this Court heard oral argument on Hart's motion to dismiss and EBG's motion for summary judgment in the federal action, and on the bankruptcy appeal.

## II. HART'S MOTION TO DISMISS OR STAY THE FEDERAL ACTION

■ As a preliminary matter, we must resolve whether the present declaratory judgment action should be dismissed or stayed, as Hart argues. Hart first contends that this action is barred by the Bankruptcy Court's prior ruling, under the doctrine of res judicata. *See* Hart Mem. to Dismiss, at 10–16.

In her order approving the Stipulation, Judge Prudence B. Abram ordered the deletion of one of its clauses which provided, "WHEREAS, Debtor warrants that the Sublease is in full force and effect and is binding upon Debtor and Hart." *See* Order, *In Re Sanshoe Worldwide Corp.*, 91 B 10922 (PBA), May 9, 1991, at 3. Judge Abram also stated that "the Court makes no findings or conclusions" with respect to Hart's claims that the lease or sublease

terminated. *Id.* Hart maintains that this constitutes a final judgment on the merits denying a claim by EBG that the lease or sublease had not terminated. *See* Hart Mem. to Dismiss, at 12–13.

We find the doctrine of res judicata inapplicable here. The clause in the Stipulation submitted to the Bankruptcy Court for approval was not a "claim" by EBG against Hart, but rather a contract term between EBG and Sanshoe, providing a warranty by Sanshoe, so that if the sublease were held not binding, Sanshoe would be liable to EBG. This warranty had no binding effect on Hart.

During the hearing before Judge Abram, EBG agreed to accept assignment of Sanshoe's interest as sublessor without the warranty. *See* Transcript of Proceedings before the Hon. Prudence B. Abram, May 3, 1991, at 40 (hereinafter "Bankruptcy Tr."). Judge Abram's Order deleted the clause, and the Court explicitly stated that it was making no finding on the termination issue. *See* Order, at 3. As the transcript of the hearing makes clear, Judge Abram found that it was not necessary for her to resolve that issue, and preserved it for potential future litigation between the parties. *See* Bankruptcy Tr. at 122–23. This explicit refusal to resolve the issue does not constitute a final judgment on the merits. *See Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *see generally* 18 Wright, Miller, and Cooper, *Federal Practice & Procedure* § 4436. Therefore, we find the doctrine of res judicata does not bar the present action. For similar reasons, we also find that this action does not constitute a collateral attack upon the decision in the Bankruptcy Court.

■ In its papers, Hart further argues that the state court is the proper forum for resolution of the issues involving the validity of the sublease, so that the federal case

---

or in the Alternative, Stay this Action, at 8 n. 6. (hereinafter "Hart Mem. to Dismiss"). EBG asserts that the papers were left in the offices where EBG officers work, but were not actually delivered to the officers. *See* Defendants' Memorandum of Law in Support of Motion to Dis-

miss or Stay the State Court Complaint, June 3, 1991, at 7 n. 5, attached as Exhibit D to Feldman Aff. In any event, the parties agree that service was effective on May 15, 1991 when the Secretary of State was served pursuant to New York BCL § 306.

should be dismissed or stayed in favor of the pending state action. However, the day before oral argument on the present motions, the state court deferred to this Court and declared that it would take no action until the bankruptcy appeal was resolved. *See* Transcript of Proceedings before the Hon. Leonard B. Sand, September 12, 1991, at 9, 29 (hereinafter "District Ct.Tr."). Clearly, resolution of the validity of the assignment of the sublease to EBG under federal bankruptcy law will affect both the federal and state declaratory actions.

Because this Court will necessarily be deciding the bankruptcy appeal, we find that it would best promote judicial economy for us to go forward with the federal declaratory judgment action at the same time. The state and federal actions were begun simultaneously, or within a day of each other,[2] and clearly the state court, by its own choice, will progress no further in its case until this Court acts. Where the state court has already deferred to this Court, we find that a prompt and complete disposition of all the issues in this Court will best serve the interests of the parties as well as the judicial interest in efficiency. For the foregoing reasons, Hart's motion to dismiss or stay the federal declaratory judgment action is denied.

### III. HART'S BANKRUPTCY APPEAL

Hart appeals from the Bankruptcy Court's Order approving Sanshoe's assumption and assignment of the lease and sublease to EBG under 11 U.S.C. § 365. Hart argues that section 365(c)(3) requires that before such assumption and assignment can occur, the Court must find that the lease and sublease had not been terminated. Hart contends that the Court erred by approving the assignment while expressly abstaining from making such findings. Further, Hart argues that the Bankruptcy Court also erred in its finding that there was "[a]dequate assurance of future performance by the assignee of [of] the lease," as required under section 365(f)(2)(B).

### A. Standard of Review

This Court has jurisdiction to hear the instant appeal pursuant to 28 U.S.C. § 158(a). In reviewing a bankruptcy court's judgment, this Court may not set aside findings of fact unless clearly erroneous. *See* Bankruptcy Rule 8013. The bankruptcy court's conclusions of law, however, are subject to *de novo* review by the district court. *See Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395, 396 (2d Cir.1987); *In re O.P.M. Leasing Serv., Inc.*, 79 B.R. 161, 162 (S.D.N.Y. 1987).

The parties here dispute whether the bankruptcy appeal raises issues of fact or law. *See* Brief on Appeal from Determination of the Bankruptcy Court, at 1 (hereinafter "Hart Brief on Appeal"); Answering Brief of Appellees, at 6–8 (hereinafter "Sanshoe Brief"). We find that the issue raised by the Bankruptcy Court's interpretation of its responsibilities under § 365(c)(3) is one of law. Therefore, in deciding whether findings concerning termination of the lease and sublease were required, we review the Bankruptcy Court under a *de novo* standard. We conclude, however, that the issue raised by the Court's finding under § 365(f)(2)(B) that "adequate assurance" existed is one of fact, and adopt the "clearly erroneous" standard for review of this finding.

### B. Pre-petition Termination

Hart appeals from the Bankruptcy Court's order on the ground that the Court failed to follow the requirements of section 365(c)(3) of the Bankruptcy Code, which states that "[t]he trustee may not assume or assign any executory contract or unexpired lease of the debtor ... if ... such lease is of nonresidential real property and has been terminated under applicable non-bankruptcy law prior to the order for relief." 11 U.S.C. § 365(c)(3). Hart argues that the Bankruptcy Court erred by not making findings on whether Sanshoe's lease with 470 Park South had terminated

---

**2.** See discussion at n. 1 *supra*.

before approving the assumption and assignment of the lease to EBG. Further, Hart contends that under the "applicable nonbankruptcy law", that of New York, the lease had terminated, so that the assignment was not allowed under the Code.

The Bankruptcy Court did hear some evidence on the issue of termination of the lease, through Nicholas Carlozzi, the chief financial officer of Sanshoe. Under cross-examination by Hart's attorney, Mr. Carlozzi testified that in early January Sanshoe paid in full the amount due for the December rent, which the landlord accepted:

> [t]he understanding that we had at the time that the rent was delivered, and this was early in January, December rent was delivered, that would cause all of the previously filed actions to cease and that he understood and I understood that we would be making our best efforts to pay the January rent on a timely basis and go on thereafter. It was his and my joint understanding that Sanshoe was still a tenant, that we wanted to be a tenant at that time and were doing everything we could to try to bridge a difficult period.

Bankruptcy Tr. at 88–89. Judge Abram concluded that Sanshoe retained some possessory interest in the lease, which permitted the Bankruptcy Court to approve assumption and assignment, without ultimately resolving whether the lease was valid. Addressing Hart's attorney, the Court stated:

> The debtor had not been in fact evicted or locked out of the premises. So I have to accept Mr. Carlozzi's testimony that as between the parties, the parties reinstated the lease and kept it alive and viable. Whether you are going to be in a position to find some technical reason why you can get out of your lease, which is what you are trying to do, is a different point. I don't need to pursue that. I only need to find that the debtor has some apparent right, title and interest sufficient to permit the debtor—I could not permit the debtor to give an assignment of all its right, title and interest to the Brooklyn Bridge and it couldn't do that because at

the present time, to the best of my knowledge, the debtor has no known interest of any sort, has no claim to such an interest of any sort and I should not permit the debtor to do something that plainly is beyond the pale.

> Here there is no question but that the debtor is in actual possession of this space under some claim of right, and therefore it doesn't fit into my Brooklyn Bridge model of letting the debtor do something where there is no known reason to permit it to do it. I am letting the debtor do it in a situation in which we are saying that litigating the actual rights is not material to approving the transaction and it is material to you but not for reasons that are material to this case. It is material to you because you would like to be able to take advantage of certain facts to relieve yourself of an obligation under a lease that you entered into a year ago, when but for the circumstances of the debtor's financial distress you would have no grounds whatsoever.

Bankruptcy Tr. at 105–07. At the conclusion of the hearing, the Court again referred to Mr. Carlozzi's testimony with regard to the status of the lease:

> I am satisfied that the testimony of Mr. Carlozzi, while it is not directed to legal technicalities, indicates that the landlord did not proceed to the stage of sending the Marshal to the door, padlock the premises and having the debtor secure reentry and that we had only gotten as far as the debtor being threatened with eviction, which threat was resolved by a payment made.

Bankruptcy Tr. at 123.

The Court made it clear that it was preserving Hart's rights to litigate the issue of the lease's termination.

> I would not approve, which is that I would not allow the debtor to make a warranty as to the Hart sublease. I would require that the debtor simply transfer all of its right, title and interest, if any, and I understand that's acceptable to the landlord because I do want the debtor to be liable for any breach of

warranty claim in that connection, in addition to which I am not making a finding that—the contrary side of that is I am not making a finding what it is the landlord is getting and taking an assignment of or that EBG is taking the assignment of the Hart sublease. I think those issues can be litigated between the parties. Bankruptcy Tr. at 122–23. This conclusion is also reflected in the Bankruptcy Court's modification of the Stipulation in its order. *See* discussion at 589–590, *supra.*

The reluctance of the Bankruptcy Court to become involved in an inquiry into the lease's validity is understandable, given its sense that Sanshoe maintained a possessory interest in the premises, that Hart's rights were not affected, and that Hart's argument was designed simply to avoid the lease, an issue with which the Court should not be concerned. The Court's primary purpose was to effectuate a transaction that would be most productive to the estate:

> [t]hat Hart in this instance would prefer to be able to remove itself does not seem to be something that the Bankruptcy Code requires me to facilitate and that the interests of the estate are in favor of permitting this transaction. . . .

Bankruptcy Tr. at 121.

■ Nevertheless, § 365(c)(3) requires the Court to make a threshold inquiry into the existence of a lease for nonresidential real property before it can approve assumption or assignment of that lease. *In re Emilio Cavallini, Ltd.,* 112 B.R. 73, 75 (Bankr.S.D.N.Y.1990); *see also In re Windmill Farms, Inc.,* 841 F.2d 1467, 1469 (9th Cir.1988). Despite the reasonableness of the Bankruptcy Court's conclusion, we believe it should have made more formal findings regarding the legal status of the lease. Because we review this *de novo,* we must conclude that the Bankruptcy Court erred by not undertaking this review. While this conclusion would normally necessitate a reversal of the Bankruptcy Court Order and a remand to the Court below to make the required findings, we believe such a procedure would be futile in this instance. In the course of deciding the

summary judgment motion, *see infra,* we find that the lease in fact had not terminated for the purposes of § 365(c)(3), so that the assumption and assignment were proper. Therefore, we find the Bankruptcy Court's failure to make formal findings regarding the termination of the lease to be harmless error. We uphold its Order approving the Stipulation, and deny Hart's appeal on these grounds.

## C. Adequate Assurance

■ Section 365(f)(2)(B) provides that an unexpired lease of the debtor may be assigned only if "adequate assurance of future performance by the assignee of such . . . lease is provided." 11 U.S.C. § 365(f)(2)(B). The Bankruptcy Code does not define "adequate assurance," and upon examination of the legislative history, the courts have concluded that "Congress intended that the words 'adequate assurance' be given a practical pragmatic construction . . . to be determined under the facts of each particular case." *In re Bygaph, Inc.,* 56 B.R. 596, 605 (Bankr.S.D.N.Y.1986); *In re Natco Industries, Inc.,* 54 B.R. 436, 440 (Bankr.S.D.N.Y.1985).

■ It appears that this provision was primarily designed to protect landlords, and the "chief determinant" of adequate assurance is whether the rent will be paid. *In re Bygaph, Inc.,* 56 B.R. at 605; *In re Brentano's,* 29 B.R. 881, 883 (Bankr.S.D.N.Y. 1983). In the present case, the landlord, 470 Park South, does not object to the assignment of the sublease, and the assignee, EBG, is 470 Park South's general partner. In this context, and given the primary purpose of section 365(f)(2)(B), there appears to have been no need for the Bankruptcy Court to undergo an extended evaluation of adequate assurance of EBG's future performance.

Hart argues that assurance of future performance includes nonmonetary as well as financial obligations under the lease, and that the Bankruptcy Court failed to examine the ability of EBG to perform such obligations to Hart as the handling of Hart's security deposit, and its ability to function as a landlord to Hart. *See* Hart

Brief on Appeal, at 7. First, to the extent that nonfinancial obligations should be reviewed, the courts, consistent with the legislative intent of § 365(f)(2)(B) to protect landlords, have focused on the obligations of the assignee to the landlord. *See, e.g., In the Matter of Fulton Air Service, Inc.,* 34 B.R. 568, 573 (Bankr.N.D.Ga.1983). Thus, here the relationship of primary concern for the purposes of § 365(f)(2)(B), is that between EBG and 470 Park South, rather than that between EBG and its sublessee, Hart.

Further, however, the issue of EBG's obligations to Hart was discussed at the bankruptcy hearing. Counsel for EBG and 470 Park South stated that:

> EBG is legally obligated to take the security deposit and hold it in trust under the General Obligations Law and, in any event, the landlord [470 Park South] will guarantee EBG's performance of its obligations under the sublease.

Bankruptcy Tr. at 5–6. Later in the hearing, Judge Abram again raised the question and received the same assurances. *See* Bankruptcy Tr. at 60.

For all of the above reasons, we conclude that the Bankruptcy Court's finding that the requirements of § 365(f)(2)(B) were satisfied was not clearly erroneous, and deny Hart's appeal on these grounds.

## IV. EBG'S MOTION FOR SUMMARY JUDGMENT

EBG moves for summary judgment on its claims that Hart abandoned the premises, thus ending the sublease's term, and that Hart remains liable for rent and damages. The primary dispute here is whether the sublease was still valid at the time that Hart vacated the premises, and thus whether Hart's departure constituted an "abandonment."

### A. Standard of Review

Summary judgment is appropriate where the moving papers and affidavits submitted by the parties "show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of showing the absence of a genuine issue as to any material fact, and the Court must view the evidence in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

The Court's role in such a context is not to resolve disputed factual issues, but rather to determine whether the record, taken as a whole, supports any issues that require a trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Nevertheless, the very language of the summary judgment standard provides that "the mere existence of *some* alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). Materiality is determined by reference to the substantive law applicable to the case at hand, and factual disputes irrelevant to its outcome "will not be counted." *Id.* at 248, 106 S.Ct. at 2510.

### B. Termination through Non–Payment Proceedings

■ Hart argues that it did not abandon the premises, because the lease and its sublease were terminated. It is clear that if the lease were terminated, then Hart's sublease would automatically be terminated as well. *See World of Food, Inc. v. New York World's Fair 1964–65 Corp.,* 22 A.D.2d 278, 280, 254 N.Y.S.2d 658, 661 (1964).

Hart's primary argument is that the lease between Sanshoe and 470 Park South was terminated before Sanshoe petitioned for bankruptcy as a result of non-payment proceedings brought against Sanshoe by 470 Park Avenue South. There is not a genuine dispute over the factual back-

ground to this claim.[3]

The applicable statute is section 749(3) of the *New York Real Property Actions and Proceedings Law*, which reads in pertinent part:

[t]he issuing of a warrant for the removal of a tenant cancels the agreement under which the person removed held the premises, and annuls the relation of landlord and tenant, but nothing contained herein shall deprive the court of the power to vacate such warrant for good cause shown prior to the execution thereof.

*New York RPAPL* § 749(3). Hart argues that the issuance of the warrant in January terminated the lease, and thus its sublease with Sanshoe, and that this warrant was never vacated. *See* Hart Mem. in Opp., at 28, 31.

■ It is clear that under section 749(3), the issuance of a warrant of eviction technically terminates the landlord-tenant relationship. *In re Darwin*, 22 B.R. 259, 262 (Bankr.E.D.N.Y.1982); *New York City Housing Authority v. Torres*, 61 A.D.2d 681, 682, 403 N.Y.S.2d 527, 529 (1978). However, the summary proceeding remains open, and the relationship may be revived until the warrant is actually executed. *In re Richard's Pontiac, Inc.*, 6 B.R. 773, 775 (Bankr.E.D.N.Y.1980); *Lindsay Park Houses v. Greer*, 128 Misc.2d 775, 776, 490 N.Y.S.2d 953, 955 (N.Y.Civ.Ct.1985). As long as the tenant remains in legal possession of the premises, the court retains jurisdiction to take any steps in the proceeding that it considers in the interest of justice. *Lindsay Park Houses*, 128 Misc.2d at 776; 490 N.Y.S.2d at 955. For example, under § 749(3), the court may use its discretion to vacate an unexecuted warrant for "good cause."[4] *In re Emilio Cavallini, Ltd.*, 112 B.R. 73, 77 (Bankr.S.D.N.Y.1990); *In re Richard's Pontiac, Inc.*, 6 B.R. at 776; *New York City Housing Authority v. Torres*, 61 A.D.2d at 683, 403 N.Y.S.2d at 529.[5]

■ The landlord-tenant relationship also may be reinstated after the issuance of a warrant by the actions of the landlord.

**3.** Hart raises several alleged factual variations concerning the payment of rent and the issuance of the warrant. *See* Hart Memorandum in Opposition to EBG's Motion for Summary Judgment, at 10–13 (hereinafter "Hart Mem. in Opp."). Upon examination of the record in this case, we find that no *genuine* discrepancy exists. For example, Hart points out that EBG claims that Sanshoe's payment of the rent was accepted by 470 Park South on January 7, while Mr. Carlozzi, Sanshoe's chief financial officer, testified at the bankruptcy hearing that the payment was "early in January." *See* Feldman Aff. ¶ 9; Bankruptcy Tr. at 88. We do not find any inconsistency here. Moreover, the cancelled check date-stamped January 7, attached to EBG's Reply Memorandum, provides conclusive documentation for the January 7 date. Because we hold that no genuine dispute over material facts exists, we do not find further discovery to be necessary.

**4.** In certain circumstances, New York courts have vacated warrants of eviction even after execution. *See, e.g., Central Brooklyn Urban Devel. Corp. v. Copeland*, 122 Misc.2d 726, 729–30, 471 N.Y.S.2d 989, 993 (N.Y.Civ.Ct.1984); *Albany v. White*, 46 Misc.2d 915, 918–19, 261 N.Y.S.2d 361, 364 (N.Y.Civ.Ct.1965).

**5.** Because of the possibility that the court will vacate an unexecuted warrant, the courts have found that a debtor/tenant retains an equitable interest of possession in the lease despite the issuance of the warrant which is subject to the automatic stay provision in section 362 of the Bankruptcy Code. *See In re Emilio Cavallini, Ltd.*, 112 B.R. at 77; *In re Onio's Italian Restaurant Corp.*, 42 B.R. 319, 320 (Bankr.S.D.N.Y. 1984); *In the Matter of GSVC Restaurant Corp.*, 3 B.R. 491, 494 (Bankr.S.D.N.Y.), *aff'd*, 10 B.R. 300 (S.D.N.Y.1980).

As the Bankruptcy Judge put it in *In re Richard's Pontiac, Inc.*, 6 B.R. at 775, "[t]he exact nature of this property right, however, is unclear." The courts have held that the debtor/tenant's equitable interest in the lease provides that he may inherit the right to seek vacatur of the warrant. *See In re Emilio Cavallini, Ltd.*, 112 B.R. at 77; *In re W.A.S. Food Service Corp.*, 49 B.R. 969, 972 (Bankr.S.D.N.Y.1985). However, this equitable right of possession may not necessarily encompass the right of the debtor to assume and assign the lease itself. *See In re W.A.S. Food Service Corp.*, 49 B.R. at 972 (construing district court opinion in *In Re GSVC Restaurant Corp.* to hold that absent the actual vacatur of the warrant by the state court, the lease cannot be assumed or assigned). The Bankruptcy Court in the present case concluded that such a possessory right would allow for such assumption and assignment. *See* discussion at 591, *supra*. Under the circumstances of the present case, we find that the warrant was waived, and so we do not need to reach the issue of the extent of an equitable right of possession under § 365(c)(3).

Acceptance of rent, without more, does not automatically reinstate the relationship. *J.A.R. Management Corp. v. Foster,* 109 Misc.2d 693, 694, 442 N.Y.S.2d 723, 724 (App.Term.1980); *Spirer v. Adams,* 144 Misc.2d 903, 907, 545 N.Y.S.2d 504, 507 (Civ.Ct.1989). It is the landlord's intent when accepting the rent that controls whether the tenancy is revived. *J.A.R. Management Corp.,* 109 Misc.2d at 694, 442 N.Y.S.2d at 724; *Spirer v. Adams,* 144 Misc.2d at 908, 545 N.Y.S.2d at 508; *see also In re Eastern Systems, Inc.,* 105 B.R. 219, 232 (Bankr.S.D.N.Y.1989), *aff'd,* 1991 WL 90733, 1991 U.S. Dist. LEXIS 6935 (S.D.N.Y. May 23, 1991). Such intent may be inferred from intentional, affirmative actions of the parties involved. *See Spirer v. Adams,* 144 Misc.2d at 908, 545 N.Y.S.2d at 508.

There is no dispute that Sanshoe tendered the full payment of December rent to 470 Park South. The cancelled check dated January 7, and the Judgment giving the warrant date as January 9 demonstrate conclusively that payment was accepted by the landlord before a warrant even issued. In this situation, the issuance of the warrant would have no legal effect. According to 470 Park South's general counsel, once the landlord had received the December rent from Sanshoe on January 7, it notified its landlord-tenant counsel that the summary proceeding should be discontinued, and treated the issuance of the warrant as a nullity. *See* Feldman Aff. ¶ 9.

However, even assuming *arguendo* that the issuance of the warrant was valid, the landlord did accept full payment of the rent, and it is clear that its intent was to reinstate the tenancy. The landlord never attempted to execute the warrant. *See* Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment, at 12 (hereinafter "EBG Mem. of Law"). Further, when the landlord began new proceedings against Sanshoe for nonpayment of the January and February rent, it began "non-payment," rather than "hold-over" proceedings. Such "non-payment" pro-

ceedings can be commenced only when a landlord-tenant relationship still exists, and here the landlord alleged in its petitions that Sanshoe remained the tenant. *See* Notices of Petition, attached as Exhibits B and C to Feldman Aff. Therefore, even assuming that the issuance of the warrant was effective, the landlord's actions constituted a revival of the landlord-tenant relationship.[6]

We conclude, therefore, that the lease was not terminated because of the non-payment proceedings.

### C. Other reasons for termination

Hart offers several alternative theories for its claim that the lease, and thus its sublease terminated. Significantly, there are no genuine factual disputes between the parties with regard to any of these claims.

### 1. Merger

■■■ EBG, the assignee, is the corporate general partner of 470 Park South, the landlord. Hart argues that, by reason of the assignment, a single entity simultaneously holds both the fee interest and the tenancy in the 11th floor; the tenancy, the lesser estate, "merges" into the fee, and the lease is terminated. It is true, that under New York law, when the greater and lesser estates meet in the same person, such a merger occurs. *See Schmaeling v. Schmaeling,* 127 Misc.2d 763, 767, 487 N.Y.S.2d 494, 498 (Dist.Ct. Nassau Co. 1985); 74 N.Y.Jur.2d, Landlord and Tenant § 753.

At issue here is whether a general partner of a corporation is the "same person" as the corporation for the purposes of this merger doctrine. There appears to be no New York case which directly addresses this situation. However, in *Ministers, Elders and Deacons of the Reformed Protestant Dutch Church v. 198 Broadway, Inc.,* 88 A.D.2d 511, 511, 450 N.Y.S.2d 4, 5 (1982), *aff'd,* 59 N.Y.2d 170, 451 N.E.2d

---

**6.** Though further non-payment proceedings were initiated with regard to the January and February rents, hearings were never held, and

no judgment or warrant ever issued. Therefore, these proceedings had no effect on the validity of the lease.

164, 464 N.Y.S.2d 406 (1983), the court found that the fact that both the overlandlord and underlandlord were corporations owned by the same parties or that one was the owner of the other did not bring about a merger.

Moreover, under the equitable doctrine of merger, the New York courts have looked to the intentions of the parties even when a merger in the "same person" would otherwise have occurred; there is a presumption against finding that a merger occurred if it would be against the interest of the party acquiring both estates. *See William P. Rae Co. v. Courtney*, 250 N.Y. 271, 274, 165 N.E. 289, 290 (1929); 74 N.Y.Jur.2d, Landlord and Tenant § 753. In this case, a merger of the estates in the landlord, 470 Park South, would terminate the lease and the sublease for the 11th floor. By arranging for its general partner, EBG, to become the assignee of the Sanshoe's lease, 470 Park South demonstrated that it did not want a merger, and therefore a termination to occur.

For all of the above reasons, we conclude that a merger of the estates did not occur, and that the lease has not been terminated for this reason.

2. Separate Leases and the Cross–Default Provision

Hart contends that the leases for the 11th and 12th floors should be interpreted as a single agreement, and that the Bankruptcy Code requires the assumption and assignment of an entire agreement. Therefore, Hart argues, Sanshoe's assignment of the 11th floor lease to EBG, while rejecting the 12th floor lease, is void, and so the sublease is void as well. Though mentioned only briefly, Hart also appears to argue that the cross-default provisions in the leases also prohibit the rejection of one and assignment of the other. For this reason, Hart argues, the assignment here is void, and the sublease is not effective as against Hart.

In *BWA Corp. v. Alltrans Exp. U.S.A., Inc.*, the court found that "instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction will be read and interpreted together." *BWA Corp. v. Alltrans Exp. U.S.A., Inc.*, 112 A.D.2d 850, 852, 493 N.Y.S.2d 1, 3 (1985). In *BWA Corp.*, a letter of agreement between a sublessee and an overlandlord regarding extra electricity costs was executed the same day as the sublease between the sublessee and sublessor. *Id.* at 851, 493 N.Y.S.2d at 2. The letter agreement expressly referred to the sublease, and contained a clause which stated: "in order to induce you [the overlandlord] to consent to the making of the above proposed sublease, the undersigned [the sublessee] agrees [to the electricity charges]." *Id.* at 852, 493 N.Y.S.2d at 2. The court found that the sublease and the letter were part of the same transaction to sublease the premises in question, and should be treated as a single document. *Id.* 493 N.Y.S.2d at 3. In that case, both documents related to a single transaction, and the lease of the same particular space; the letter of agreement functioned as an addendum to the terms of the sublease.

In *In re Eastern Systems, Inc.*, the court found that leases for certain units and option contracts to buy them should be construed as one transaction, because the viability of the options depended on the fulfillment of the lease terms. *In re Eastern Systems, Inc.*, 105 B.R. at 229. As in *BWA Corp.*, one document was a subsidiary of the other.

In the present case, however, the different leases are contracts for separate spaces. They do not have the same subject matter or purpose, and one agreement is not the subsidiary of the other. We find that the leases for different floors should not be construed as a single instrument. Therefore, Sanshoe may validly assign the 11th floor lease, while rejecting the lease for the other floors.[7]

---

**7.** Even assuming *arguendo* that the leases should be construed as a single agreement, at least one bankruptcy court has approved a partial assignment. *See In re Brentano's,* 29 B.R. 881 (Bankr.S.D.N.Y.1983) (where a single lease covered two floors, the court permitted the as-

■ Finally, while the 11th and 12th floor leases do contain cross-default provisions, *see* Lease ¶ 83, these provisions do not limit the ability of a debtor to assign one of the leases while rejecting the other in the course of a reorganization proceeding. Contractual limitations on the ability to assign unexpired leases other than those specified in § 365(c) are prohibited under § 365(f). *See In re Braniff, Inc.*, 118 B.R. 819, 845 (Bankr.M.D.Fla.1989); *In re Sambo's Restaurants, Inc.*, 24 B.R. 755, 757 (Bankr.C.D.Calif.1982).

Therefore, the debtor's rejection of leases for the other floors of 470 Park South does not prohibit the assignment of the 11th floor lease, and the sublease between the assignee, EBG, and Hart is valid.

### 3. Fraudulent Inducement

■ Hart also argues that it may have a claim for fraudulent inducement, so that the sublease should be rescinded. Hart contends that Sanshoe may have made false representations about its financial stability, and Hart asks for a continuance so that it may seek discovery from the former Hart employee who negotiated the sublease. *See* Kane Aff. at ¶ 21; Hart Mem.in Opp. at 8.

Hart claims that Sanshoe represented that Sanshoe was "an ongoing entity with stable prospects." *See* Hart Mem. to Dismiss, at 4 n. 3. Assuming that Sanshoe did make such a representation, this would not sustain a fraudulent inducement claim as a matter of law:

> [m]isrepresentations regarding financial statements must not only be false, but definite and certain, and must involve more than expressions of opinion or statements concerning future happenings, in order to give rise to an action for fraud.

*Carte Blanche (Singapore) PTE., Ltd. v. Diners Club Int'l, Inc.*, 758 F.Supp. 908, 915 (S.D.N.Y.1991); *see also Austin Travel Group, Inc. v. Karson*, 142 A.D.2d 539, 540–41, 530 N.Y.S.2d 212, 213 (1988). Hart's potential claim thus does not present a genuine issue of material fact for

the purposes of a summary judgment motion, and we therefore conclude that a continuance for Hart to discuss the sublease negotiations with its former employee would not be productive.

### D. Abandonment

■ We therefore conclude that the Hart sublease was in effect both pre-petition and after its assignment to EBG. It is undisputed that Hart vacated the premises in late March. Hart also argues that because it was named in summary proceedings and served with a notice of petition, it had a right to vacate. *See* Hart Mem. in Opp., at 41. However, Hart, as the subtenant was joined as an additional named defendant by the landlord. As a subtenant, Hart does not have such a right:

> when the paramount landlord threatens to cancel the paramount lease, and even goes to the extent of instituting summary proceedings to that end; the subtenant may not anticipate the actual cancellation and vacate from the premises. Such a course of conduct is fraught with danger; for, if the sublessor and the paramount landlord should settle their differences, the vacating subtenant will find himself in the unenviable position of being held liable for breach of his sublease, which in such case continues unaffected by all the preceding legal skirmishes.

Rasch, *New York Landlord and Tenant* § 9:71 at 395 (3d ed. 1988).

We find that under ¶ 17 of the lease, incorporated into the sublease by Art. III(c), Hart has abandoned the premises, and the sublease term has now ended. Though ¶ 17 requires a 5–day notice of cure, and a 3–day notice of cancellation before termination, such notices are not material, since it is clear that Hart did not consider itself responsible for rent, and did not intend to return to the space. *See* Kane Aff. ¶ 22.

Finally, we find that Hart's other arguments opposing summary judgment with regard to EBG's standing and Hart's pend-

signment of the lease *pro tanto* for one of the    floors).

ing motion to stay this action, *see* Hart Mem. in Opp., at 6–7; 22–26, are moot in light our decisions in the bankruptcy appeal and the motion to stay contained within this Opinion. For all of the above reasons, we grant EBG's motion for summary judgment with respect to the claim requesting a declaration that the sublease term was terminated due to Hart's abandonment. *See* Complaint at 7, ¶ (a).

### E. Damages

■ Article III(C) of Hart's sublease provides that in case of any breach by Hart, the sublessor shall have all of the rights against Hart as would be available in the lease. Because we find that Hart has breached through its abandonment and default, we conclude that the remedies enunciated in paragraph 18 of the lease are available to EBG. However, while we find that EBG is entitled to the remedies provided in paragraph 18, we do not calculate the amount of rent and damages nor determine how they are to be calculated and paid. *See* Complaint at 7, ¶¶ (b),(c). We refer these questions to a Magistrate Judge of the Southern District for determination in accordance with the provisions of ¶ 18 of the lease.

## V. CONCLUSION

For the foregoing reasons, the order of the Bankruptcy Court is affirmed. Hart's motion to dismiss or stay the federal action is denied. EBG's motion for summary judgment is granted as to claim (a). The Court hereby refers claims (b) and (c) to a Magistrate Judge of the Southern District for an inquest on damages consistent with this Opinion.

SO ORDERED.