OPINION OF THE COURT

Per Curiam.

Final judgment entered July 31, 1979 (S. Schwartz, J.) *574 reversed with $30 costs; final judgment of possession is awarded in favor of the tenant.
The landlord initiated this holdover proceeding to regain possession of apartment 3B in premises known as 147 East 61st Street, New York, New York. The petition alleges that the landlord "requires the demised premises for the personal use and occupancy of her son in accordance with section 54(b) of the Code of the Real Estate Industry Stabilization Association of New York City Inc.” That section provides:
"The owner shall not be required to offer a renewal lease to a tenant only upon one of the following grounds:
"(b) Occupancy by owner or immediate family — The owner seeks in good faith to recover possession of a dwelling unit for his own personal use and occupancy or for the use and occupancy of his immediate family; the term 'immediate family’ includes a husband, wife, son, daughter, stepson, stepdaughter, father, mother, father-in-law or mother-in-law.”
The tenant herein entered into a two-year lease for the apartment in question, at a monthly rental of $350, to commence April 1, 1977 and to end March 31, 1979. Section 60 of the Rent Stabilization Code provides in pertinent part: "Every owner shall notify the tenant in occupancy not more than 150 and not less than 120 days prior to the end of the tenant’s lease term, by mail, of such termination and offer to renew the lease at the stabilization rent permitted for such renewal lease and otherwise on the same conditions as the expiring lease, and shall give such tenant, a period of 60 days to renew such lease and accept the offer * * * nothing herein shall shorten the 60 day period a tenant has in which to renew after notification by the owner of his options on renewal.” Admittedly the landlord did not provide the tenant with an offer to renew within the required period of not more than 150 and not less than 120 days prior to the end of the tenant’s lease term.
At trial, the tenant testified that on approximately March 15, 1979, as she was leaving for work, the landlord approached her in the hall of 147 East 61st Street and told her, "I just want you to know that I’m not renewing your lease”. When the tenant inquired as to why the landlord was not going to renew her lease, the landlord ostensibly responded, "I’m not going to tell you”.
The tenant further testified at trial that on about March 30, 1979, the landlord came to the tenant’s apartment, com *575 plained about the color of tenant’s kitchen, complained about the tenant’s air conditioner, complained about the way the tenant put out her garbage, and nonetheless proceeded to state: "Well, I’ve decided to renew your lease”. The tenant responded that that would be fine and inquired as to the amount the rent would be increased. The landlord is alleged to have stated that she would increase the rent to the legal maximum, and in that regard the tenant thought the landlord said the increase would 5V2%* Although the tenant indicated that she wished to immediately give the landlord a check for the adjusted April, 1979 rent, the landlord stated that would not be necessary.
The landlord did, however, give the tenant two receipts, one acknowledging tenant’s payment of $369.25 (i.e., $350 [old rent] plus 5Vi% [$19.25] = $369.25 [new rent]), and the other acknowledging payment of $19.25 (i.e., the increase in the one-month security deposit). Neither receipt was signed by the landlord, although each was initialed "O.K.” at the place provided for landlord’s signature. The landlord told the tenant that the receipts would show that the tenant had a new lease and that the tenant should mail the rent check and the additional security check on the following Monday.
On April 2, 1979, the tenant wrote the landlord as follows:
"I am writing to reconfirm our conversation on Friday March 30.
"Enclosed please find two checks one in the amount of $369.25 to serve as my April rent under the new two year lease which you agreed to give me by May 1. The second check for $19.25 is for the additional security.”
By correspondence of April 12, 1979, the landlord returned the two checks forwarded by the tenant, and stated that she regretted being unable to renew the tenant’s lease, but she could not do so because she needed tenant’s apartment for her son.
The landlord, at trial, admitted that near the end of March, 1979 she had told the tenant that she would renew her lease. After making that offer to the tenant, the landlord changed her mind and decided not to renew the tenant’s lease. According to the landlord, after having offered the tenant a renewal *576 lease, she (landlord) discussed the matter with her son and he indicated he wanted to move into the tenant’s apartment. It was for that reason that the landlord returned the checks forwarded by the tenant on April 2, 1979.
We conclude that the trial court erred in finding that there was no intention on the part of the landlord to renew the tenant’s lease. Not only did the tenant testify that the landlord had agreed to renew tenant’s lease, but the landlord admitted that to have been the case. Once having offered the tenant a new lease, even though the offer was not made until long after the time frame for such renewal offers provided under section 60 of the Rent Stabilization Code, the tenant has a full 60 days to respond to that offer. Section 60 of the Rent Stabilization Code specifically provides in this regard: "nothing herein [i.e., Rent Stabilization Code] shall shorten the 60 day period a tenant has in which to renew after notification by the owner of his options on renewal.”
In the instant case, the tenant did not utilize the 60-day period she had to respond to the renewal offer, accepting, as she did, that offer immediately. Once the tenant accepted the renewal offer, the landlord, under sections 54 and 60 of the Rent Stabilization Code, was obligated to provide the tenant with a new lease. This court, in Perlman v Rosenthal (NYLJ, May 20, 1977, p 4, col 1), considered a matter somewhat analogous to the case at bar. In Perlman v Rosenthal (supra), the premises at issue were sold during the 60-day period which the tenant had to accept or reject landlord’s renewal offer, and the new landlord attempted to withdraw the renewal offer, prior to tenant’s acceptance thereof, upon the ground that the new landlord wished to personally occupy the apartment in question. In rejecting landlord’s claim that he was entitled to withdraw the offer of renewal, we held: "Under Section 60 of the Code of the Rent Stabilization Association of New York City, Incorporated, the sixty day period a tenant has in which to renew his lease after notification by the owner of the tenant’s options on renewal may not be shortened (see Simon v. Elkon, AT 1 N.Y.L.J., Apr. 26, 1976, p. 6, col. 1).” Once an offer of renewal has been made to a tenant, and especially after the acceptance of that offer by the tenant, the landlord may not utilize subdivision (b) of section 54 of the Rent Stabilization Code to defeat the tenant’s right to a renewal lease.
Since the tenant is thus entitled to prevail in this matter *577 upon the grounds noted above, we are not required to reach the issue raised by the tenant of the landlord’s alleged each of good faith in seeking possession of the subject apartment for the use of her son. Were it necessary to reach that issue we would conclude that the record amply supports the finding of the trial court that the landlord was acting in good faith. Furthermore, we find no merit to the tenant’s argument that subdivision (b) of section 54 of the Rent Stabilization Code represents an unlawful exercise of legislative power (Alden v Callahan, 65 Misc 2d 183).
Concur; Hughes, J. P., Tierney and Riccobono, JJ.

 The Rent Guidelines Board Order No. 10, concerning rent levels July 1, 1978-June 30, 1979, permits an adjustment for a two-year lease renewal expiring before July 1, 1981, of 5ti%.