OPINION OF THE COURT
Richard F. Braun, J.
Respondents move for summary judgment dismissing with prejudice the petition in this summary holdover proceeding. The proceeding is based on the grounds of nonprimary residence and illegal sublet. The motion is granted to the extent of awarding respondents summary judgment dismissing with prejudice so much of this proceeding as is based on the ground of nonprimary residence contained in the notice of nonre *99 newal (Golub notice), which is a predicate to this proceeding. (See, Golub v Frank, 65 NY2d 900 [1985].)
The subject premises is a rent-stabilized apartment in a building owned by a cooperative corporation. Petitioner is the proprietary lessee of the subject premises, and respondent tenant is his tenant thereat. Respondent tenant had a lease for the subject premises which expired on October 31, 1991. Pursuant to Rent Stabilization Code (9 NYCRR) § 2524.2 (c) (2), petitioner sent respondent tenant a Golub notice on or about July 1,1991* that respondent tenant’s lease would not be renewed when it expired because respondent tenant allegedly was not occupying the subject premises as his primary residence. Between August 8 and the middle of August 1991, petitioner offered respondent tenant a renewal lease for the subject premises. Respondent tenant had 60 days to accept the offer and renew the lease. (Rent Stabilization Code § 2523.5 [a].) Petitioner received the executed lease renewal, dated September 16, 1991, from respondent tenant no later than September 25, 1991. Petitioner sent respondent tenant a letter, dated September 25, 1991, stating that the lease renewal offer had been sent to respondent tenant erroneously and that the offer was revoked. Respondent undertenant’s assertion that he never received the letter is immaterial because the letter was addressed to respondent tenant, to whom the lease renewal offer had been extended; and there is no affidavit from the latter denying receipt of the letter.
Petitioner contends that the sending of the lease renewal offer to respondent tenant was a clerical error. Respondents argue that the execution of the lease renewal bars petitioner from proceeding on the nonprimary residence ground. Respondents are correct.
Under the common law, a binding written lease occurs upon execution by both parties thereto and delivery of the lease. (219 Broadway Corp. v Alexander’s, Inc., 46 NY2d 506, 509-513 [1979].) This principle is recognized in the regulatory scheme for rent-stabilized apartments. (See, Rent Stabilization Code § 2523.5 [a].) The definition of an "owner” of a rent-stabilized apartment includes a lessor or proprietary lessee. (Rent Stabilization Code § 2520.6 [i].) The owner of a rent-stabilized apartment who offers a lease renewal to a tenant must provide the tenant with a fully executed lease renewal signed by the owner and the tenant within 30 days of receipt of the renewal signed by the tenant. (Rent Stabilization Code § 2522.5 [b] [1]; § 2523.5 [a].) The consequences of the owner’s *100 failure to do so are, inter alia, that, upon complaint of the tenant the New York State Division of Housing and Community Renewal "shall” order the owner to provide such a lease copy (Rent Stabilization Code § 2522.5 [b] [2]); and that the tenant "shall not be deprived of any of his or her rights under the [Rent Stabilization Law and Code]” (Rent Stabilization Code § 2523.5 [a]). The right to a renewal lease is one of the most significant rights provided for tenants under the Rent Stabilization Law and Code. (Park House Partners v DeIrazabal, 140 AD2d 84, 89 [1st Dept 1988].)
The circumstances here thus constitute a waiver of petitioner’s right to proceed under the notice of nonrenewal because once respondent tenant executed and delivered the renewal lease offered by petitioner, petitioner was bound to execute the renewal and return a fully executed copy to respondent tenant. (Cf, Matter of East 56th Plaza v New York Conciliation & Appeals Bd., 56 NY2d 544, 546 [1982] [construing the Code of Rent Stabilization Association of New York City, Inc. (former Rent Stabilization Code) to bar a landlord from adding a term to a lease after the tenant had already accepted the lease renewal offer without such term]; Riklin v Schub, NYU, July 13,1983, at 11, col 6 [App Term, 1st Dept] [interpreting the former Rent Stabilization Code in dismissing an owner’s use holdover proceeding, where the tenant accepted the landlord’s offer to renew the lease, but no renewal lease was executed or delivered by the landlord]; Horran Holding Corp. v Ashlock, NYLJ, June 1, 1983, at 6, col 1 [App Term, 1st Dept] [dismissing a summary proceeding under the former Rent Stabilization Code, after the tenant executed a renewal lease, and the landlord refused to send the tenant a subscribed copy]; De Santis v Randolph, 103 Misc 2d 573, 576 [App Term, 1st Dept 1980] [construing the former Rent Stabilization Code in awarding a final judgment of possession to the tenant in an owner’s use holdover proceeding, where the tenant accepted the landlord’s lease renewal offer, and the landlord accepted from the tenant the increased rental amount and security deposit thereunder]; Ambassador Realty Co. v Wachtel, 139 Misc 2d 965, 967 [Civ Ct, Queens County, Milano, J., 1988] [a seven-day notice of termination based on an alleged nuisance, pursuant to Rent Stabilization Code § 2524.2 (c) (2) and § 2524.3 (b), was vitiated by the tenant’s receipt of a renewal lease offer from the landlord nine days after the termination date contained in the notice of termination]; Conthur Dev. Co. v Bartfield, NYLJ, Sept. 30, 1987, at 13, col 3 [Civ Ct, NY County, Lippmann, J.] [a nonprimary residence holdover proceeding *101 brought under the former Rent Stabilization Code was dismissed due to the landlord’s offering the tenant a lease renewal 13 days after service of a Golub notice, which offer the tenant accepted seven days later, although the landlord tried to revoke the renewal offer by letter two months and 17 days later].)
The result here is not changed by the fact that the notice of termination here was in part based on the ground of nonprimary residence. In Central Park S. Assocs. v Hackel (104 AD2d 344, 345 [1st Dept 1984]), the Court held that the lease renewal notice provisions of the former Rent Stabilization Code do not apply to a nonprimary residence situation. That holding has been overruled by the First Department in Park House Partners v DeIrazabal (140 AD2d 84, 86-90, supra).
Furthermore, petitioner’s offering respondent tenant a renewal lease after service on him of a Golub notice caused the notice to become equivocal. (See, Ambassador Realty Co. v Wachtel, supra; Conthur Dev. Co. v Bartfield, supra.) After receipt of the lease renewal offer from petitioner, respondent tenant could have properly believed that petitioner no longer intended to proceed on the Golub notice. Respondent tenant was entitled to a notice that remained unequivocal so that he could prepare to move out of the subject premises or defend this proceeding. (See, Ellivkroy Realty Corp. v HDP 86 Sponsor Corp., 162 AD2d 238 [1st Dept 1990]; Kimwal Realty Co. v De La Houssave, NYLJ, Feb. 8, 1990, at 23, col 3 [App Term, 1st Dept]; Grusk Realty Co. v Nieves, NYLJ, Mar. 20, 1978, at 11, col 2 [App Term, 1st Dept].) Once the lease renewal offer was received in August 1991, respondent tenant should have been secure in ceasing such efforts.
Petitioner is not saved by his assertion that the tender of a lease renewal offer to respondent tenant was a mere clerical error, and thus by the implication that he did not intend to offer respondent tenant a renewal of the lease for the subject premises. The lack of such an intention is immaterial because, as stated supra, the Rent Stabilization Code requires that such an offer be binding. (Cf., Matter of East 56th Plaza v New York City Conciliation & Appeals Bd., 56 NY2d 544, 546, supra.) At best, petitioner’s actions constituted a unilateral mistake which cannot be held against respondent tenant “absent knowledge of the error [by him], fraud or some other equitable consideration [citation omitted].” (Harran Holding Corp. v Ashlock, supra, at 6, col 1.)
*102 Therefore, petitioner has waived its right to proceed under the predicate Golub notice. The cause of action based thereon must be dismissed.
Respondents’ motion to award summary judgment dismissing the illegal sublet cause of action of the petition is denied. Respondents argue that petitioner’s acceptance of rent through May 1992 requires a dismissal of this proceeding because acceptance thereof vitiated the notice of termination served after the Golub notice pursuant to Rent Stabilization Code § 2524.4 (c). The only time period during which petitioner could not accept rent is for a period between February 29, 1992, the date of termination of the tenancy of respondent tenant contained in the 30-day notice of termination, and the date of commencement of this holdover proceeding. (See, Manhattan Ave. Assocs. v Butler, NYLJ, Oct. 12, 1990, at 21, col 3 [App Term, 1st Dept]; Associated Realties v Brown, 146 Misc 2d 1069,1070 [Civ Ct, NY County 1990, Wendt, J.].)
First, because neither party has attached as an exhibit to their papers on this motion a copy of the affidavit of service of the notice of petition and petition, which are dated March 9, 1992, the court cannot know when this proceeding was commenced. Second, petitioner’s agent claims that he returned all of the tendered rent payments, although he does not state when he did so. Respondent undertenant denies receiving a return of the rents tendered. However, there is no affidavit from respondent tenant asserting that the rent payments were not returned to him. The court notes that the copies of the money order slips which were said by respondent under-tenant to have been sent to petitioner in order to pay the rent all have the name of respondent tenant written on them, not that of respondent undertenant. Respondents submit no proof that petitioner cashed any of the money orders. Therefore, there are issues of fact on this defense which must await a trial in this proceeding.

 The imprecision as to certain dates is due to how they were stated in the moving papers.