**In re Ali YASIN, Debtor.**

**Bankruptcy No. 94 B 45139 (SMB).**

United States Bankruptcy Court, S.D. New York.

March 8, 1995.

44

Rubin Baum Levin Constant & Friedman, New York City (Richard G. Primoff, of counsel), for 752 End Run Realty Corp.

Ali Yasin, debtor pro se.

## MEMORANDUM DECISION VACATING PRIOR DECISION REJECTING DEBTOR'S RENT–STABILIZED LEASE AND VACATING JANUARY 20, 1995 ORDER

STUART M. BERNSTEIN, Bankruptcy Judge.

Ali Yasin, a chapter 13 debtor (the "Debtor"), moves for reconsideration of this Court's January 31, 1995 oral decision which determined that the Debtor's residential lease (the "Lease") at 752 West End Avenue, New York, New York had been rejected as a result of the Debtor's failure to provide adequate assurance of a prompt cure of lease defaults and of future performance within the time previously set by the Court in its January 20, 1995 order. At the time that the Court signed the January 20 order and sub-

sequently rendered its January 31 decision, the Court did not know that the landlord was refusing to renew the debtor's lease which was terminating on January 31, 1995. Had it known this fact, the Court would not have entered the January 20 order or rendered its January 31 decision. Accordingly, and for the reasons that follow, the Court grants the Debtor's motion for reconsideration, and upon reconsideration, vacates its January 20 order and its January 31 decision which flowed from that order.

## FACTS

### A. Introduction

On November 2, 1994 (the "Filing Date"), the Debtor filed a *pro se* chapter 13 petition. For several years prior to the filing and continuing through the present, the Debtor and his family have resided in Apartment 9B at 752 West End Avenue, New York, New York. The apartment is rent stabilized, and the Debtor's occupancy has been subject to a series of rent stabilized leases. The Debtor's most recent rent stabilized lease, *i.e.*, the Lease, terminated on January 31, 1995.

On or about September 19, 1994, the Debtor's landlord mailed to the Debtor a Renewal Lease Form in accordance with the Rent Stabilization Code ("RSC"). *See* N.Y.Unconsol.Law, Book 65, 9 N.Y.C.R.R. § 2523.5, at 774 (McKinney 1987).[1] The landlord's cover letter reminded the Debtor of his duty to return the signed renewal lease within 60 days which, according to the landlord's letter, fell on November 14, 1994.[2] The landlord's letter concluded with the following warning:

> If we do not receive this Lease package by this date, we will have no recourse but to commence legal proceedings.

The Debtor failed to sign and return the Renewal Lease prior to the filing of the petition. On November 14, 1994, the landlord sent a follow up letter incorrectly advising the Debtor that his time within which to return the renewal lease had expired. The letter nevertheless granted the Debtor an additional ten days within which to return the signed form, failing which the landlord would commence legal proceedings. The Debtor still failed to return the renewal lease.

Because the last day to return the renewal lease fell during the post-petition period, the Debtor arguably got the benefit of the 60 day extension granted by 11 U.S.C. § 108(b). This extension would have given the Debtor until January 3, 1995 to return the renewal form. The Debtor failed, however, to return the signed renewal even by that date.

### B. The Landlord's Motion

By Notice of Motion, dated December 16, 1994, and returnable on January 11, 1995, the landlord moved under 11 U.S.C. § 365 to compel the Trustee or the Debtor to assume or reject the Lease within ten days. The Lease terminated only twenty days after the scheduled return date. In support of the motion, the landlord argued that the Debtor owed pre-petition rent in the sum of $2,835.39, and had failed to pay any post-petition rent accruing at the monthly rate of $890.80. The motion papers also recounted the Debtor's erratic history of paying rent, and in its accompanying memorandum, the landlord contended that the Debtor could not assume the Lease under 11 U.S.C. § 365(b)(1) which, among other things, requires a debtor to provide adequate assurance of future performance.[3] The landlord's

---

1. RSC § 2523.5(a) directs the landlord to mail the renewal lease form "not more than 150 days and not less than 120 days prior to the end of the tenant's lease term." The tenant then has 60 days to accept the offer by signing and returning the renewal form.

2. The letter miscalculated the 60 day period, and hence, misinformed the Debtor as to the last day to accept the offer. The 60 day period ran on November 18, 1994.

3. Section 365(b)(1) provides:

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—(A) cures, or provides adequate assurance that the trustee will promptly cure, such default; (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and (C) provides adequate assurance of future performance under such contract or lease.

motion did not advise the Court that the Debtor had failed to return the renewal form, and by implication, that the Lease would terminate on January 31, 1995, and no renewal lease would issue, even if the Debtor cured all of the pre-petition and post-petition defaults.

On the return date of the landlord's motion, the Debtor appeared *pro se.* As a result of those proceedings, the Court signed an order, dated January 20, 1995, giving the Debtor until January 31, 1995, to assume or reject the Lease. In the event the Debtor decided to assume the Lease, he was directed to pay all post-petition arrears, aggregating $2,672.40, by January 31, 1995, and to cure the pre-petition default, aggregating $2,835.00, or provide adequate assurance that he would promptly do so.

On January 31, 1995, the Debtor returned to Court with a proposal to assume the Lease and a signed renewal form. He intended to immediately cure the post-petition defaults. In addition, he proposed to cure the pre-petition default by paying $445.00 per month for six months. In response, the landlord pointed out that under his petition, the Debtor's monthly income exceeded his monthly expenditures by only $300.00. Accordingly, he was proposing a "cure plan" that was not feasible. The Debtor replied that he had additional although somewhat irregular commission income which, when added into the formula, generated enough to cure the defaults in accordance with the original proposal.

Refusing to consider unreported income on an issue of feasibility, the Court determined that the Debtor had failed to comply with the requirements under the January 20 order concerning assumption of the Lease. The Court ruled on the record that this failure led to the rejection of the Lease. It directed the settlement of an order, but before the Court actually signed an order embodying its

January 31 decision, the Debtor made the motion described immediately below.

## C. The Motion for Reconsideration

On February 2, 1995, the Debtor moved for reconsideration of the January 31 decision.[4] The submission provided additional evidence and a new proposal that could have been presented on January 31, 1995. Nevertheless, the Court excused these failures in light of the Debtor's *pro se* status and the fact that his and his family's home of many years was at stake.

The Debtor explained that when he prepared his petition, he thought he was supposed to include only his regular base income, but not the sporadic, irregular income that he earned from time to time as a business consultant and motivational speaker. To overcome the landlord's objection, the Debtor proposed to immediately pay not only the post-petition rent, but also an additional sum of $870.00 on account of the pre-petition rent. His pre-petition cure payments over each of the next six months would then amount to $300.00, a feasible proposal in light of the revenues and expenses that the Debtor listed in his petition.

The landlord submitted affidavits, documents and a memorandum in opposition to the Debtor's motion. The memorandum recounted the Debtor's poor payment history, and repeated its earlier argument that the Debtor had failed to demonstrate the ability to perform his obligation to pay rent in the future. Sandwiched between the pages of the 12 page memorandum, the landlord referred, in one paragraph on page 6 and in two separate footnotes, to the fact that the Debtor had failed to return the renewal lease, and hence, the Lease terminated as of January 31, 1995.

On the return date of the reconsideration motion, the Court preliminarily indicated

---

4. Rule 13(j) of the Bankruptcy Rules for the Southern District of New York provides that within ten days of the "filing" of the Court's determination of the original motion, a litigant can move for reargument and serve a memorandum "setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." The parties cannot file additional affidavits unless directed to do so by the Court. Fed.R.Civ.P. 60(b), made applicable by Fed.Bankr.R. 9024, authorizes the Court to modify or vacate prior orders on several grounds, including mistake and surprise, misconduct by the adverse party and any other reason justifying such relief.

that the Debtor's modified proposal satisfied the requirements of Section 365. At that point, the landlord urged its belated 'argument that the Lease had terminated through non-renewal, and there was nothing to assume. The Court directed an evidentiary hearing which took place on February 22, 1995, and yielded the facts set forth in subparagraph A, *supra.*

## DISCUSSION

### A. Section 365 of the Bankruptcy Code

Section 365 of the Bankruptcy Code governs the assumption and rejection of unexpired leases. The controlling rules depend on the nature of the lease and the chapter of the case. In chapter 7, if the trustee fails to assume or reject an unexpired lease of residential real property or personal property within 60 days after the order for relief (assuming no extension of time), the lease is deemed rejected. 11 U.S.C. § 365(d)(1). Similarly, absent an extension for cause, a trustee under any chapter must assume or reject an unexpired lease of non-residential real property under which the debtor is a lessee within 60 days after the order for relief; otherwise, the lease is deemed rejected. 11 U.S.C. § 365(d)(4).

Section 365(d)(2) governs the situation presented by the facts of this case, offering flexibility and requiring the exercise of discretion. It provides:

> In a case under chapter 9, 11, 12, or 13 of this title, the *trustee* may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court, on request of any party to such contract or lease, *may order the trustee* to determine within a specified period of time whether to assume or reject such contract or lease. [Emphasis added].

Although the conclusion seems anomalous, the quoted language does not explicitly apply to chapter 13 debtors. Like a chapter 7 case but unlike most chapter 11 cases, the trustee and the debtor in a chapter 13 case are two different persons. A trustee is appointed in every chapter 13 case. 11 U.S.C. § 1302(a). The Code spells out the separate duties imposed on the trustee (§ 1302(b)) and the debtor (§ 1303). If the chapter 13 debtor is engaged in business, the Code directs the trustee to carry out the investigative and related reporting duties of a chapter 11 trustee (§ 1302(c)), grants the debtor the rights and powers of a trustee under sections 363(c) and 364 (§ 1304(b)), but also imposes on the debtor the trustee's duties specified in 11 U.S.C. § 704(8) (*see* § 1304(c)).

While the debtor's chapter 13 plan must provide, subject to section 365, for the assumption, rejection or assignment of executory contracts or unexpired leases that were "not previously rejected" [5], the Code does not indicate that the debtor is the proper object of a motion to compel pre-confirmation assumption or rejection of an unexpired lease under section 365(d)(2). To the contrary, the language of section 365(d)(2) is not explicitly applicable, and indeed seems to exclude application, to the chapter 13 debtor.

The Federal Bankruptcy Rules compound the confusion. Federal Bankruptcy Rule 6006(b), entitled "Proceeding to Require *Trustee* to Act", provides:

> A proceeding by a party to an executory contract or unexpired lease in a chapter 9 municipality case, chapter 11 reorganization case, chapter 12 family farmer's debt adjustment case, or chapter 13 individual's debt adjustment case, to require the trustee, debtor-in-possession, or debtor to determine whether to assume or reject the contract or lease is governed by Rule 9014.

Under Rule 6006, the reference to the "debtor" suggests a broader reading of section 365(d)(2). The term is superfluous if meant to refer to a municipality under chapter 9 because under that chapter, "trustee"

---

5. This phrase does not necessarily imply that the debtor could have procured the prior rejection, or that the lease was automatically rejected following the debtor's failure to assume it within the time set by the court under section 365(d)(2).

Rather, it implies a prior rejection by the chapter 13 trustee. *See* Lawrence P. King, et al., *Collier on Bankruptcy* ¶ 1322.11[2] at 1322–32 (15th ed. 1994).

means "debtor". 11 U.S.C. § 902(5).[6] Further, it obviously does not refer to a chapter 11 debtor *not* in possession—the third party would, in that situation, seek to compel the chapter 11 trustee to assume or reject the unexpired lease—and since Federal Bankruptcy Rule 9001(10) defines "trustee" to include a chapter 11 debtor-in-possession, "trustee" is sufficient in the usual chapter 11 case, and the use of "debtor" is, again, unnecessary. The only other situations in which the reference to the "debtor" would not include the "trustee" are chapter 12 and chapter 13 cases. But as already discussed, the specific language of section 365(d)(2) does not permit a party to an unexpired lease to bring a proceeding against a debtor in a chapter 13 case (or a chapter 12 case) to assume or reject an unexpired lease or executory contract.

It is possible that the use of "trustee"—and the failure to refer to the debtor in a case under chapter 12 or chapter 13—represents an oversight in the drafting of section 362(d)(2). In practice, it makes little sense to compel the chapter 13 trustee, rather than the debtor, to assume or reject an unexpired lease or executory contract particularly where the debtor—and not the chapter 13 trustee—exercises the option in connection with the plan. The Court need not resolve this issue, however, to decide the pending motion. Given the unique nature of rent stabilized leases, and the landlord's belated assertion of the debtor's failure to return the signed renewal form, the Court will vacate the January 20 order and January 31 decision, the net effect of which was to reject the Lease. The debtor can decide whether to assume or reject his lease under his plan, provided he cures his post-petition defaults and remains current on his post-petition rent.

## B.  Rent Stabilized Leases

The Second Circuit recently considered rent stabilization, and addressed the nature of rent stabilized leases, in *Resolution Trust Corp. v. Diamond ("Diamond I")*, 18 F.3d 111 (2d Cir.), *vacated and remanded sub nom. Solomon v. Resolution Trust Corp.,* —— U.S. ——, 115 S.Ct. 43, 130 L.Ed.2d 5 (1994)[7], *on remand,* 45 F.3d 665 (2d Cir. 1995) (*"Diamond II"*). In the *Diamond* cases, the Resolution Trust Corporation (the "RTC") had taken over the liquidation of the Nassau Federal Savings & Loan Association, whose assets included nine condominium apartments located in a building in New York City. The building had been converted to condominium ownership under a non-eviction plan, and the apartments were occupied by tenants under either rent control or rent stabilization.

The Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") directs the RTC to maximize the value of the assets that come under its control. *Diamond I,* 18 F.3d at 113. Under 12 U.S.C. § 1821(e)(1), made applicable to the RTC by 12 U.S.C. § 1441a(b)(4)(A), the RTC has the power to disaffirm or repudiate any contract or lease that is burdensome. The RTC sought to disaffirm and repudiate the rent controlled and rent stabilized tenancies in the building, and as a result of strong opposition from the residents and the New York State Attorney General, commenced a declaratory judgment action in the United States District Court for the Southern District of New York, seeking a determination of its right to terminate the tenancies under FIRREA.

The principal issue raised was whether rent controlled and rent stabilized tenancies were statutory tenancies rather than contracts and leases, and hence, beyond the repudiation power granted to the RTC under FIRREA. The Court of Appeals initially held in *Diamond I,* 18 F.3d at 118, and reaffirmed in *Diamond II,* 45 F.3d at 671,

---

**6.** In chapter 9, the court can appoint a trustee solely for the purpose of bringing certain avoiding actions. 11 U.S.C. § 926. The chapter 9 trustee can neither assume nor reject unexpired leases or executory contracts or be compelled to do so; only the debtor can.

**7.** *Diamond I* was remanded for reconsideration in light of the Supreme Court's decision in

*O'Melveny & Myers v. FDIC,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). The latter involved a suit by the Federal Deposit Insurance Corporation against the law firm that had represented a failed savings & loan association, and concerned whether state or federal common law determined the defendant's liability.

that the statutory definition of "contract or lease" under FIRREA is a matter of federal law. The *Diamond I* Court then extensively reviewed the nature of the rent stabilized lease, including the effect of statutory, non-contract law on the parties' rights. Primary among these rights, the landlord cannot evict the tenant as long as the tenant continues to pay rent. 18 F.3d at 119 (quoting RSC § 2524.1(a)). Further, a landlord must offer the tenant a renewal lease prior to the end of the term subject to certain limited exceptions, 18 F.3d at 119, and if the landlord fails to do so, the landlord cannot collect any rent increase. *Id.;* RSC § 2522.5(b)(2).[8] In addition, although the tenant's prior written lease has expired, the tenant can continue to occupy the premises as if the expired lease remained in effect. RSC § 2523.5(d).

Despite this extensive regulation by statute, the Court concluded that rent stabilization tenancies are lease-based. *Diamond I,* 18 F.3d at 119; *Diamond II,* 45 F.3d at 673–74. The rent stabilization laws require a written lease as the basis of every tenancy, and written renewal leases after the expiration of the initial term. *Diamond I,* 18 F.3d at 119. Although the statutory provisions alter or modify these rights and obligations, they retain "much of the character of a voluntary contract." *Id.* Accordingly, the RTC had the power to repudiate rent stabilized leases under FIRREA. *Diamond I,* 18 F.3d at 121; *Diamond II,* 45 F.3d at 673–74.

In *Diamond II,* the Court of Appeals focused on the residents' and New York Attorney General's claim that the anti-eviction regulations under rent control and rent stabilization nonetheless survived the RTC's repudiation of the lease. The Court found that the purpose of the RTC's repudiation power was to maximize assets, and to accomplish this end, Congress granted the RTC the power to repudiate burdensome leases. 45 F.3d at 674–75. If state law prevented the RTC from evicting the tenants for as long as they continued to pay the regulated rent, the leasehold would continue to be subject to the same burden. *Id.* at 675. Consequently, the

state anti-eviction regulations interfere with the RTC's ability to accomplish its Congressional objectives, and to the extent they do, are pre-empted by FIRREA. *Id.* at 675.

## C. Assumption and Rejection of Rent Stabilized Leases Under the Bankruptcy Code

■ The Second Circuit's decisions in *Diamond I* and *Diamond II* foreclose the claim that rent stabilized leases are not leases (or contracts) within the meaning of federal law, and hence, 11 U.S.C. § 365. Consequently, they can be assumed or rejected. Less obvious, however, is the interplay between the rejection of the rent stabilized lease, and the tenant's rights under the applicable rent regulations to continue to occupy the premises as a rent stabilized tenant. While *Diamond* resolved this issue in connection with the RTC's repudiation power under FIRREA, the issues presented in this case are distinguishable.

■ Although an unexpired rent stabilized lease can be rejected under 11 U.S.C. § 365, the debtor-tenant may still be entitled to a renewal lease and to continue to occupy the premises under the RSC. While rejection constitutes a breach of the contract or lease, 11 U.S.C. § 365(g), it does not terminate it. *See e.g., In re Austin Dev. Co.,* 19 F.3d 1077, 1083 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 201, 130 L.Ed.2d 132 (1994); *Societe Nationale Algerienne v. Distrigas Corp.,* 80 B.R. 606, 608 (D.Mass.1987); *Fellerman & Cohen Realty Corp. v. Clinical Plus, Inc. (In re Hirschhorn),* 156 B.R. 379, 388 (Bankr.E.D.N.Y.1993); *Cohen v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.),* 138 B.R. 687, 708 (Bankr.S.D.N.Y.) (quoting Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook,* 62 U.Colo.L.Rev. 1, 16 (1991)); *In re Blackburn,* 88 B.R. 273, 276 (Bankr.S.D.Cal.1988). Moreover, although a sporadic history of paying rent may prevent a debtor from demonstrating adequate assurance of future performance under section

---

8. In *Gruen v. Patterson,* 55 N.Y.2d 631, 633, 430 N.E.2d 1306, 1306, 446 N.Y.S.2d 253, 253 (1981), the New York Court of Appeals held under the identical language in the predecessor

to the present RSC that even "deliberate and repeated tardiness in rent paying" does not provide grounds for refusing to offer a renewal lease.

365(b)(1)(C), the tenant may nevertheless be entitled to a renewal lease. Given the strict construction of the statutory exceptions to the landlord's duty to offer a renewal lease, *see Gruen v. Patterson, supra,* the landlord who procures a rejection under section 365 may nevertheless find, in a subsequent state court action seeking to evict the tenant,[9] that the tenant is entitled to continued occupancy and a renewal lease.

Further, nothing in the Code or section 365 pre-empts the tenants renewal rights under the rent stabilization laws. The mere fact that the Code does not expressly retain for the tenant his renewal rights under applicable non-bankruptcy law is not determinative. *See In re Friarton Estates Corp.,* 65 B.R. 586, 593 (Bankr.S.D.N.Y.1986) (debtor-landlord could not use section 365 to repudiate rent controlled leases because section 365(h)(1) permits the non-debtor tenant, following rejection, to renew or extend the lease in accordance with applicable non-bankruptcy law); *accord Diamond I,* 18 F.3d at 122. Under section 365, rejection constitutes a statutory breach, but does not repudiate or terminate the lease. The parties must, therefore, resort to state law to determine their rights as a result of the breach, *see In re Blackburn,* 88 B.R. at 276, and in the case of a lease, the landlord must commence an eviction proceeding in state court and obtain a warrant of eviction; the issuance of the warrant of eviction terminates the landlord-tenant relationship under the law of New York. N.Y.Real Prop.Acts.Law § 749(3) (McKinney 1979); *accord In re Sanshoe Worldwide Corp.,* 993 F.2d 300, 304 (2d Cir. 1993); *In re Touloumis,* 170 B.R. 825, 829 (Bankr.S.D.N.Y.1994).

### D. The January 20 Order and January 31 Decision

In procuring the January 20 order and January 31 decision and in opposing the motion for reconsideration, the landlord forcefully argued that the Debtor could not (and had not) satisfied the requirements under section 365(b)(1) for curing a lease in default. However, the landlord's insistence, as part of that argument, that the debtor must provide adequate assurance of his future ability to pay rent, at a time when the landlord held an undisclosed intention not to renew the lease after January 31, 1995, is something the Court will not permit.

The landlord made its motion returnable during the last month of the Lease after the last rent payment was due and also after the statutory period within which to return the executed renewal form had expired. The motion implied to the Court that the landlord contemplated future performance from the Debtor, and the Court assumed, therefore, that the Debtor's tenancy would continue beyond January 31, 1995.[10] Otherwise, the landlord would have no reason to raise the Debtor's inability to assure his future performance.

Indeed, it would be disingenuous to make the motion if this were not true. The rent stabilized debtor-tenant has no incentive to cure past defaults if he must still quit the premises at the end of the term which is about to expire. Further, curing prior defaults prejudices the creditors and prefers the landlord. If the landlord contends that the debtor-tenant is not entitled to a renewal lease, the debtor, the creditors, the chapter 13 trustee and the Court have the right to know. It is particularly disturbing, therefore, that the landlord did not raise this argument in its initial moving papers, and mentioned it only somewhat obliquely in its opposition to the Debtor's motion for reconsideration.

Upon reflection, it is not appropriate to compel the Debtor to decide prior to confir-

---

9. In the case of the rejection of a debtor-tenant's unexpired non-residential real property lease, the Code directs the debtor to immediately surrender the property to the landlord. 11 U.S.C. § 365(d)(4). The forced surrender provision does not apply to other lease rejections.

10. No inconsistency exists between the impending termination of the Lease, and the motion to assume or reject it. The execution of renewal leases by the Debtor did not create new leases; the renewals extended the term of the Debtor's original lease. *See In re Touloumis,* 170 B.R. at 830. Hence, the landlord's motion is one directed at the original lease, as extended by any renewals to which the Debtor is entitled.

 

mation whether to assume or reject the Lease if the landlord contends that he is not entitled to a renewal lease, and hence, has no further right to occupy the premises. In this regard, the timing of the landlord's motion to compel assumption or rejection, its insistence that the Debtor provide adequate assurance of future performance, and its delayed argument that the Debtor was not entitled to a renewal lease, suggest that the landlord has waived the right to claim that the Debtor is not entitled to a renewal lease because he failed to sign and return the renewal form. *Cf. In re Touloumis,* 170 B.R. at 829 (landlord's execution of renewal lease vitiates prior warrant of eviction); *Spirer v. Adams,* 144 Misc.2d 903, 909, 545 N.Y.S.2d 504, 509 (N.Y.Civ.Ct.1989) (same); *DeSantis v. Randolph,* 103 Misc.2d 573, 576, 430 N.Y.S.2d 457, 460 (N.Y.Sup.1980) (rent stabilization landlord who sent renewal offer to tenant could not thereafter rely on provisions of former Section 54(b) of the Rent Stabilization Code to refuse to renew the lease); *Steinmetz v. Barnett,* 155 Misc.2d 98, 100, 586 N.Y.S.2d 877 (N.Y.Civ.Ct.1992) (rent stabilization landlord's erroneous transmission of renewal lease, which tenant executed and returned, obligated landlord to execute renewal lease and precluded landlord from proceeding to evict the tenant on non-primary residence grounds); *Ambassador Realty Co. v. Wachtel,* 139 Misc.2d 965, 967, 529 N.Y.S.2d 694, 695 (N.Y.Civ.Ct.1988) ("By offering a renewal lease after service of a termination notice the landlord waived the effect of a termination notice."); *Kips Bay Towers Associates v. Lander,* 120 Misc.2d 717, 720, 466 N.Y.S.2d 628, 630–31 (N.Y.Civ. Ct.1983) (landlord's offer of renewal lease to rent stabilized tenant prior to commencement of holdover proceeding mooted proceeding, and required its dismissal). In any event, the Court will not consider a motion (or an objection to a proposed plan) concerning assumption or rejection under section 365 absent proof that an unexpired lease exists.

### CONCLUSION

The Court grants the motion for reconsideration, and upon reconsideration, vacates the January 20 order and January 31 decision. The Debtor is directed, however, to cure his post-petition defaults within ten (10) days of the service of a signed order, settled in conformity with this decision, and to continue pay use and occupancy in accordance in the amount of the rent reserved in the Lease.

SETTLE ORDER ON NOTICE.